## SPERRY v. TOLLEY, et al.

No. 7138.   Decided November 9, 1948.   (199 P. 2d 542.)

See 62 C. J., Tenancy, sec. 48; 14 Am. Jur. 92. Right of spouse to acquire and hold title adversely to other cotenants, note, 153 A. L. R. 678.

*Jensen & Jensen,* of Nephi, for appellant.

*Henry E. Beal,* of Richfield, for respondents.

LATIMER, Justice.

This is a suit to quiet title to four contiguous tracts of land together with a one-fourth interest in certain waters of Birch Creek. The land in dispute is located in Juab County, State of Utah, and is described as follows:

"Beginning at the northeast corner of Section 20, Township 12 South, Range 1 East, Salt Lake Base and Meridian, thence running South 50 rods, thence West 35 rods, thence South 30 rods, thence West 77½ rods to the East boundary of the State Highway, thence North 7 degrees 30 minutes West along the East boundary of said

highway 80 rods more or less to the North boundary of said Section 20, thence East 122½ rods to beginning, containing 52,30/160 acres. Situate in Juab County, State of Utah."

The following diagram illustrates the location of the parcels with respect to each other and is furnished to assist the reader in following the claims of the respective parties:

The trial court quieted title in defendants and the plaintiff brings this appeal. We shall refer to the parties as they appeared below.

C. W. Tolley and G. W. Tolley, brothers, and the ancestors and predecessors in interest of the parties litigant, held title to the entire fifty-two acres for more than thirty years. It is admitted by the parties that each brother was the record owner of an undivided one-half interest in the entire tract. It is likewise admitted that the entire tract was divided into four smaller tracts and that C. W. Tolley and his successors have occupied, cultivated and improved tracts A and C and that G. W. Tolley and his successors in interest have in a similar manner possessed, used, and improved tracts B and D.

Fences were erected separating the tracts and each of the two families built homes and farm buildings on the land

they occupied. On May 25, 1931, C. W. Tolley executed and delivered a warranty deed conveying his interest in the land to his wife, Mary Melvina Tolley. The deed recited that the grantor conveyed a one-half undivided interest in the whole fifty-two acres. On October 17, 1933, G. W. Tolley executed a warranty deed to his wife, Esther F. Tolley, which likewise recited that the grantor thereby conveyed an undivided one-half interest in the whole tract. In 1943 Mary Melvina Tolley executed quit-claim deeds to George Earl Tolley and Charles R. Tolley and transferred her interest in all four tracts. Esther F. Tolley never conveyed her interest in the property and this litigation concerns the rights of her heirs to her one-half undivided interest in the entire tract of land.

The death of Esther F. Tolley, on January 9, 1934, was followed by the decease of her husband G. W. Tolley, who died December 30, 1935. Prior to their deaths but after the conveyance to Esther F. Tolley, George Earl Tolley, their son now deceasd, under some claimed arrangement with G. W. Tolley, his father, went into possession of tracts B and D, and there remained until February 14, 1946 when he and his wife, defendant Ruby G. Tolley, contracted to sell these two tracts and the right to a one-fourth interest in the waters of Birch Creek to defendants Rex L. Tolley and his wife, Gladys K. Tolley. During the period George Earl Tolley and his wife Ruby G. Tolley were in possession of Tracts B and D, the home located on Tract B was improved by them as follows: New flooring was laid, a closet was built, cabinets, sink and running water were installed in the kitchen, and electrical facilities were brought to the home. During this same period, George Earl Tolley paid the mortgage on the one-fourth interest in the waters of Birch Creek and together with several others, furnished the labor for the construction of a cement irrigation ditch to be used by himself on tracts B and D and by the others on their farms. Other minor improvements were also made. George Earl Tolley paid the taxes on these tracts B and D from 1936 to 1946.

During the period from 1936 to the time of the trial of this action, Charles R. Tolley, holding under his mother, Mary Melvina Tolley until 1943 and thereafter for himself, paid all taxes on tracts A and C and made the following permanent improvements on tract C which tend to enhance the value of that tract: The family home was reshingled, and a basement and garage were constructed.

In 1936 George Earl Tolley entered into a contract with Juab County to purchase title to tracts B and D for unpaid taxes assessed for the year 1912 and to which the county had taken an auditor's deed. The contract was fully performed in 1940 and Juab County executed a quit-claim deed to George Earl Tolley and his wife Ruby G. Tolley. Under a similar arrangement and at the same time, Charles R. Tolley purchased a tax title from Juab County for tracts A and C.

On September 17, 1946, plaintiff, a daughter of Esther F. Tolley was appointed administratrix of her mother's estate and subsequently commenced this action contending that a one-half undivided interest in all four tracts is owned by the heirs of Esther F. Tolley. In opposition to this defendants contend: (1) That even though the record title has always shown a tenancy in common between C. W. Tolley and G. W. Tolley and their successors, the undisputed facts surrounding their several occupation establishes a partition of the entire tract into four separate and distinct parcels and that C. W. Tolley and G. W. Tolley did, and the present occupants do own and occupy their respective tracts in severalty; (2) that the title to tracts B and D was purchased for delinquent taxes by George Earl Tolley from Juab County in 1940, and likewise Charles R. Tolley purchased a tax title to tracts A and C from Juab County the same year; (3) apart from whether defendants acquired title under their tax deeds, they have acquired title to the premises by adverse possession. We shall proceed to consider these questions seriatim.

(1) The record discloses that for approximately thirty years the predecessors of the present litigants occupied the fifty-two acres in the following manner: C. W. Tolley and his family occupied tracts A and C without asserting any right to the possession of tracts B and D and G. W. Tolley and his family occupied tracts B and D without asserting any right to the possession of tracts A and C. Each family built homes and farm buildings on the tracts used by them and not elsewhere, and from time to time erected fences to separate the various tracts.

In view of other facts in the record the foregoing acts are not sufficient to warrant a holding that the land had been partitioned. Co-tenants may, for purposes of convenience, occupy separate portions of the entire tract without intending to partition the land. They might make such an arrangement because it might be the most practical method of farming the common property. Even though the property is operated separately the owners might still desire to preserve their tenancy in common and maintain their right to the possession of the whole. The fact that they build separate homes and buildings and erect fences separating the tracts may indicate an intent to hold in severalty, but under the facts of this case they are not sufficient to establish a partition of the lands. In this case there is no evidence of either a written or oral contract to partition. The warranty deed executed by C. W. Tolley in 1931 recites that he conveys an undivided one-half interest in the entire fifty-two acres to his wife Mary Melvina Tolley. The deed executed by G. W. Tolley in 1933, expressly conveys a one-half interest in the whole tract to his wife Esther F. Tolley. These conveyances were made after C. W. Tolley and G. W. Tolley had owned the property for approximately forty years and had severally occupied their respective portions for more than fifteen years. Whatever evidence of intent of the parties to partition the land that may be indicated by their occupation and use of separate fenced tracts, is contrary to the express language of the warranty deeds.

The conduct of the parties over the years does not evidence an unequivocal intent to partition the premises, whereas the unambiguous language of the deeds clearly shows that both C. W. Tolley and G. W. Tolley as late as 1933, regarded themselves as tenants in common. Under these facts we hold that an undivided one-half interest in the fifty-two acres descended to the heirs of Esther F. Tolley on her death, and the plaintiff must therefore prevail in this action unless defendants acquired title either under the tax titles from Juab County or by adverse possession.

(2) The facts relative to the question concerning whether or not defendants acquired title under their quit-claim deeds from Juab County are these: Taxes on the whole fifty-two acres for the year 1912 were assessed against C. W. Tolley and G. W. Tolley, as tenants in common. These taxes were never paid; the land was subsequently sold to Juab County, and an auditor's deed was issued purporting to convey the entire tract to the county. In 1936, George Earl Tolley entered into a contract with the county whereby he agreed to buy and the county to sell tracts B and D for the sum of $191.25 payable in five annual installments. The purchase price was fully paid and a quit-claim deed from the county was issued to George Earl Tolley and his wife in 1940 and it was recorded the same year. In 1936, Charles R. Tolley entered into a similar contract with the county with respect to the two remaining tracts, A and C, and he likewise received and recorded a quit-claim deed from the county in 1940. The trial court found that the tax titles obtained by defendants and the titles upon which they rely were void because the assessment rolls for the year 1912 had no auditor's affidavits attached as required by law. The record shows that the assessment rolls for this year were examined by the county officers in whose custody they were entrusted, and the auditor's affidavits were missing from and not part of the record. That a tax title founded on an assessment unsupported by auditor's affidavits is fatally defective is our

holding in *Telonis* v. *Staley*, 104 Utah 537, 144 P. 2d 513; *Equitable Life & Casualty Ins. Co.* v. *Schoewe*, 105 Utah 569, 144 P. 2d 526; *Tree* v. *White*, 110 Utah 233, 171 P. 2d 398; *Petterson* v. *Ogden City*, 111 Utah 125, 176 P. 2d 599; *Jenkins* v. *Morgan*, 113 Utah 534, 196 P. 2d 871. It follows that defendants acquired no title to the land under their quit-claim deeds from Juab County.

(3) The evidence in the record does not establish that defendants acquired title to the land in question by adverse possession. Some jurisdictions hold that a sole and uninterrupted possession together with the exclusive taking of profits by one tenant in common, with the knowledge of the others, continued for a long series of years, without any possession or claim of right and without any participation in the profits or demand for them by the cotenants, if unexplained by any evidence tending to show a reason for such neglect to assert a right is sufficient to infer an ouster and adverse possession. Were we to follow this rule it would not aid defendants' cause. When C. W. Tolley and G. W. Tolley conveyed the property to their respective wives they admitted the rights of each other to the entire tract and as long as each was obtaining his profit from the occupied parcels there would be no reason to demand an accounting of profits from the other. Their wives continued the same arrangement so that any adverse holding would not commence until some act was performed inconsistent with that relationship.

It is undisputed that George Earl Tolley has been in possession of tracts B and D from the time of the death of his mother in 1934 until he put defendants Rex L. Tolley and his wife Gladys K. Tolley into possession under the contract of sale in 1946. It is likewise undisputed that Charles R. Tolley remained in possession of tracts A and C under his mother Mary Melvina Tolley until 1943 at which time he took his mother's quit-claim deed to the two tracts and he has remained in possession in his own right since that date. Plaintiff, however, contends that

while all the heirs of Esther F. Tolley were willing to permit George Earl Tolley to remain on tracts.B and D rent free with the right to use and consume whatever might be produced thereon, still they, the heirs, never intended to relinquish any rights of ownership in and to the property. Plaintiff further contends that the remaining heirs of Esther F. Tolley never had notice, actual or constructive, that George Earl Tolley was claiming title to the land adverse to them until about the years 1943 and 1944, at which time a printed notice of a proposed sale of the premises by George Earl Tolley was discovered. The record is silent as to the relationship existing between the heirs of Esther F. Tolley and the heirs of Mary Melvina Tolley. However, the record indicates that apart from possessing, cultivating and improving tracts A and C, neither Mary Melvina Tolley nor her successor in interest, Charles R. Tolley, have asserted any claim to these tracts to the exclusion of the heirs of Esther F. Tolley. The fact that defendants have been in exclusive possession of the respective parcels for more than seven years is not sufficient to show that their possession has been adverse to the other tenants inasmuch as each cotenant is entitled to the possession of the entire property so long as he does not exclude his cotenants or otherwise clearly act adversely to their rights. The mere fact that defendants were in sole possession of the common property and were using it as their own does not amount to an ouster of the other heirs and such possession is not adverse within the meaning of our statute. A cotenant must do something more than merely possess the common estate —he must in some way indicate to his cotenants that he is claiming the property adverse to them. Although actual notice is the most effective method, the cotenant is not required to go this far. The fact that George Earl Tolley purchased a tax title in his own name, even if it were a valid conveyance from the county, is insufficient to put his cotenants on notice. In discussing the legal effect to be given the purchase of a tax title by one of several co-owners, Mr. Black, in his work on Tax Titles, page 349, states:

"* * * Where land is owned by joint tenants, copartners, or tenants in common, and taxes are assessed upon it as a whole and it is sold for non-payment of the same, neither of the cotenants can purchase a title at the sale which shall operate to dissolve the relationship. His payment is regarded as simply discharging the assessment, and it will inure to the benefit of all. He acquires no other or greater interest than he held before, except that he has a claim upon the others for reimbursement according to their respective shares * * *."

In *McCready* v. *Fredericksen*, 41 Utah 388, 126 P. 316, we held that any act done by a cotenant for the protection of the common property will be presumed to be for the benefit of all tenants and the presumption prevails until the contrary is clearly made to appear. Under the rules thus announced, the heirs of Esther F. Tolley were not put on notice of adverse claims by Charles R. Tolley and George Earl Tolley when they contracted to purchase these lands in their own names. The other heirs had the right to believe the tax titles were being purchased for their benefit and not in opposition to them. It is likewise true that the repairs and improvements made in the dwellings, buildings and fences are acts normally consistent with a tenancy in common and not adverse to it. The only act on the part of any of the occupying tenants which was sufficient to put the other tenants on notice of an adverse claim was the advertisement of tracts B and D for sale by George Earl Tolley some time in 1943 or 1944. Sufficient time has not elapsed from these dates to permit defendants to acquire title under a theory of adverse possession.

The judgment and decree of the trial court quieting title in the defendants must therefore be reversed. Costs to appellant.

McDONOUGH, C. J. and WADE, PRATT, and WOLFE, JJ., concur.