513 P.2d 417

**CORPORATION NINE, a Utah corporation, Plaintiff and Appellant,**

**v.**

**Ray L. TAYLOR and Neva W. Taylor, his wife, Defendants and Respondents.**

**Ray L. TAYLOR and Neva W. Taylor, his wife, Plaintiffs and Respondents,**

**v.**

**CORPORATION NINE, a Utah corporation, Defendant and Appellant.**

**No. 12983.**

Supreme Court of Utah.

Aug. 17, 1973.

Victor G. Sagers, Midvale, for plaintiff-appellant.

Lawrence L. Summerhays, of Strong & Hanni, Salt Lake City, for defendants-respondents.

CROCKETT, Justice:

This controversy arises out of a real estate contract wherein Ray L. Taylor and his wife Neva, as sellers, undertook to sell 50 acres of unimproved land in the southeast part of Salt Lake County to plaintiff, Corporation Nine, Inc., buyer. After certain of the payments had been made, and some tracts of the land had been conveyed seriatim, as the contract provided, dispute arose. Corporation Nine brought action seeking specific performance and damages, alleging wrongful refusal by the sellers Taylors to accept tender of payments and convey further tracts of the land. Taylors brought their own separate action against Corporation Nine alleging that it had defaulted. They asked to have the contract terminated, and that they be released from any obligation to convey the rest of the land.

The actions were consolidated and tried to the court. It found the issues in favor of the Taylors: that plaintiff Corporation Nine had defaulted, and that its rights under the contract were terminated; and awarded the Taylors $6,099.87 for past due interest, and $1,000 attorney's fees. Corporation Nine appeals. The Taylors urge affirmance of the judgment, except they claim entitlement to a greater amount of attorney's fees.

The contract by which Corporation Nine (in this decision regarded as plaintiff) agreed to buy and the Taylors (herein regarded as defendants) agreed to sell the 50 acres above mentioned was executed January 24, 1968. Mr. John New, general manager, and an owner in Corporation Nine, handled the transactions for it. The contract stated the purchase price as $240,000:

$20,000 down and $25,000 March 1, 1969, and a similar amount on March 1 of each year thereafter, plus interest at four percent on unpaid balances. Concurrent with its execution the sellers (Taylors) were to convey six acres, and on receiving the payment on March 1 of each year were to convey an additional five acres. The sellers retained possession, and all incidents and duties pertaining to ownership, including paying taxes thereon, until the payment was received and the land conveyed. The contracts also stated that Corporation Nine had no privilege of prepayment without prior written consent of the sellers.

■ It is the position of Corporation Nine that because the main contract was not followed literally, but was departed from by modification by the parties, it was not bound to keep its strict terms. In the first transaction, February 1, 1968, Corporation Nine paid the $20,000 down payment and received its six acres. It also requested and received an extra .567 acre and executed a promissory note for $12,835 to the Taylors payable in three years. (This note was finally paid off in June of 1971.) This side transaction was explained by the Taylors thus: that the actual agreed purchase price was $250,000 and the Taylors wanted $30,000 down; but that Mr. New explained that Corporation Nine did not

have $30,000, but if the contract price were shown to be only $240,000, it could obtain a $20,000 loan from the bank; and that it would give a promissory note secured by a mortgage for the other $10,000 of the down payment, plus the $2,835 for the .567 acre, which would account for the $12,835 promissory note. On the question of the purchase price, the trial court found in favor of Corporation Nine that the purchase price was $240,000. That finding stands as correct, particularly in view of the parol evidence rule.[1]

The following year, in February 1969, Corporation Nine again asked the Taylors for more land than the five acres provided for in the contract. This was because, in variance of their plan of building cluster type housing, they planned to house the 1969 Utah Home Show. The Taylors agreed to convey more land, at a value of $5,000 per acre for the additional acreage. Three separate parcels were conveyed at that time: 8.618 acres; 4.45 acres; and 1.-18 acres. Corporation Nine made the following payments: $30,900 on February 17, 1969; $22,500 on October 9, 1969; and $18,090 on January 7, 1970. Some difficulty appears in these figures because the payments made do not correspond exactly to the values of those individual parcels. The payment of $30,900 paid for the larg-

1. See Bullfrog Marina, Inc. v. Lentz, 28 Utah 2d 261, 501 P.2d 266, 270 (1972); Youngren v. John W. Lloyd Construction Co., 22 Utah 2d 207, 450 P.2d 985, 987 (1969); Garrett v. Ellison, 93 Utah 184, 72 P.2d 449, 451–452 (1937).

est tract included payment of $5,900 for the separate 1.18 acre tract, and also for the defendant's five-acre obligation to purchase that year. This leaves 3.618 acres to be taken care of by the $18,090 payment.

It is of considerable significance that with respect to the other tract, the 4.45 acres, the parties prepared and signed a letter of instructions to the Security Title Company. It stated that when the payment for that tract (the $22,250) was made, it would be applied to the next annual installment under the contract. That amount was paid in October 1969, and was applied to the 1970 installment. The Taylors did not demand that the remaining $2,750 owed be paid by Corporation Nine to complete their performance for that year.

In February 1970 Taylors sent a statement of account, including interest for the previous year on the balance of the contract, to be due March 1, 1970. Upon the request of Mr. New, Taylors extended the due date several times, and after some tentative considerations concerning forfeiture, payment was finally made in November 1970. The next year, on February 25, 1971, Taylors sent notice of payments to be due March 1, 1971, $25,000 principal, plus $5,837 interest. On March 24, 1971, Corporation Nine sent a check for $9,197, which it asserted covered the interest and principal due, and demanded a conveyance of .752 of an acre. It asserted that this would complete the amount of land it had agreed to take up to that time and the payment therefore. The Taylors refused to accept that proposition and on March 31, 1971 sent Corporation Nine notice of default and their intent to terminate the contract unless it was remedied within five days. The parties stood pat on their respective positions, and these lawsuits resulted.

The foregoing tender and refusal is the heart of the controversy in this case. Corporation Nine contends that all of the three parcels conveyed in 1969, and the payments therefore, should be credited in advance on their performance of their annual obligations on the contract; whereas plaintiffs Taylors contend to the contrary, and particularly that the 1.18 acres and the amount of $5,900 paid therefore was not part of the main contract; but that it was an entirely separate transaction. It is undisputed that this small tract is not within the 50 acres described in the contract, but is in other land belonging to the Taylors. Upon disputed evidence, the trial court found this issue in favor of the Taylors: that the 1.18 acres was a separate transaction, and that the $5,900 paid therefore was not to be credited on the main contract. But it did credit all other payments made by Corporation Nine against the total of the main contract.

In regard to prepayment, the provision of the contract was: that the buyer has no

privilege of prepayment other than consistent with the terms of this agreement, unless prior written consent first had and obtained from the sellers." The court interpreted this clause as not allowing payments made under side agreements to take the place of the next succeeding annual installments, unless by written consent.[2] It is important to reflect that this procedure was followed in the letter of instructions concerning the payment of $22,250 in October 1969 for the 4.45 acres. But there was no such written consent to so apply the $5,900 for the 1.18 acres, nor to so apply the $18,090 for 3.618 acres. In view of the trial court's finding, contrary to Corporation Nine's contentions, it is clear that its tender of $9,197 in March of 1971 was several thousand dollars short of its obligation on the contract to that date.

■■■■ Corporation Nine cites authorities to support its argument that by course of conduct the Taylors had lead it into believing that modifications of the agreement would be taken as performance of the main contract and that they were thus estopped to change their position and strictly enforce its terms.[3] In looking at the principle of estoppel as applicable to the evidence here these observations are pertinent. The determination of such an issue is not dependent on the asserted subjective content of the mind of the person claiming he was misled. The test to be applied is an objective one as to what a reasonable and prudent person in the circumstances might conclude; and the burden of proof and of persuasion as to the issue of estoppel is upon him who asserts it (Corporation Nine).

■■■■ The refusal of the trial court to so find is indulged with the usual presumptions of verity; and this court on review will not overturn his determination and compel such a finding unless the evidence clearly preponderates to the contrary. In our survey of this case in the light of the foregoing it is our opinion that there is no sufficient basis to compel a finding that by their conduct the Taylors should be deemed to have relinquished their rights to insist upon compliance with the terms of the contract.

■■■ Corporation Nine makes the contention that its failure to make the payment of $25,000 principal, plus interest, on March 1, 1971, and its tender of $9,197 in lieu thereof, did not justify a "forfeiture"

---

2. The evidence is that the Taylors desired this to assure them a steady annual income.

3. Farmers & Merchants Bank v. Universal C. I. T. Corp., 4 Utah 2d 155, 289 P.2d 1045, 1048 (1955), citing J. T. Fargason Co. v. Furst, 287 F. 306, 310 (8th Cir. (1923). As to other statements of the estoppel principle see Grover v. Garn, 23 Utah 2d 441, 464 P.2d 598 (1970); Migliaccio v. Davis, 120 Utah 1, 232 P.2d 195 (1951).

and termination of the contract. It cites cases for the principle that forfeitures are not favored.[4] We agree that in the situation of the usual real estate contract, and perhaps even in this one, the five day notice to perform might be unreasonable and arbitrary if a more reasonable and longer time would have been of any benefit to the buyer. However, Corporation Nine made no such indication, nor does it now so appear. Inasmuch as it simply stood upon the position that it had tendered full performance, we do not see that any more time would have done any good. Moreover, this was not a forfeiture of the character dealt with in the usual uniform real estate contract cases referred to, where the seller can declare a forfeiture of the amounts paid in, be restored to his entire property, and the buyer be deprived thereof. In this instance the "forfeiture" is palliated to the extent that the contract is in a sense a series of divisible contracts, and the buyer has received the parcels it has paid for. Such losses and disadvantages as have been suffered are due to its own failure to perform the contract as agreed.

Corporation Nine also makes an averment that it suffered damages by making expenditures on installation or services of water, gas, sewer and other improvements. These brief comments suffice: The trial court made no finding in its favor in this respect and there is no evidence to compel such a finding, whatever expenditure may have been made was in full awareness of the contingencies to be met before defendants would come into ownership of the land, and it cannot complain that its plan was not completed, inasmuch as this was due to its own failure.[5]

On the basis of what has been said above, we are not persuaded that we should reverse the findings and conclusions of the trial court that the termination of the contract was justified.

Corporation Nine also essays that it is entitled to damages against the Taylors because they had committed a breach of the contract by entering into an agreement with a Mr. Jerry Young to sell part of the land to him. Two points support the trial court in rejecting this claim. First, the law does not require the vendor to have clear and marketable title at all times during the performance of his contract, and is not ordinarily so obliged until the time comes for him to perform. The buyer should not be heard to complain un-

4. Jensen v. Nielsen, 26 Utah 2d 96, 485 P.2d 673 (1971); Perkins v. Spencer, 121 Utah 468, 243 P.2d 446 (1952); Malmberg v. Baugh, 62 Utah 331, 218 P. 975 (1923).

5. One who spends money for the improvement of land which he does not own and is fully aware of the true character of his title should not be heard to complain. Migliaccio v. Davis, footnote 3 above.

less it appears that it will be impossible or at least highly unlikely that the seller will be able to perform his contract when he is called upon to do so,[6] which we do not see as the situation here. Complementing this is the fact that the buyer himself should not be heard to complain when it is his own default which is preventing fulfillment of the contract.

We now reverse our course to consider the contention of the defendants Taylors. They urge that, inasmuch as the contract provided for an award of reasonable attorney's fees for its enforcement, the trial court should have awarded more than the $1,000. In this regard we are in agreement with the contention of the plaintiff Corporation Nine because its position is simply to oppose any change in the findings or judgment in that regard. Although the parties had ample opportunity to prove their respective cases and the items of damages claimed, there is nothing in the evidence which would justify any such change in the award of attorney's fees.[7]

Affirmed. Costs to defendants Taylors (Respondents).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

6. See Marlowe Investment Corporation v. Radmall, 26 Utah 2d 124, 485 P.2d 1402, 1404 (1971); Woodward v. Allen, 1 Utah 2d 220, 265 P.2d 398 (1953).

7. See F.M.A. Fin. Corp. v. Build, Inc., 17 Utah 2d 80, 404 P.2d 670 (1965).