Marion W. BECKSTROM, Plaintiff and Respondent,

v.

Vere BECKSTROM and Norman Laub, Defendants and Appellants.

No. 15273.

Supreme Court of Utah.

April 14, 1978.

---

Willard R. Bishop of Morris & Bishop, Cedar City, for appellants.

Michael D. Hughes of Allen, Thompson, Hughes & Behle, J. MacArthur Wright, St. George, for respondent.

CROCKETT, Justice:

Marion Beckstrom sued his brother, Vere Beckstrom, and Norman Laub, (and their wives) seeking partition of 80 acres of land, with water rights, near Beryl, Utah, in Iron County, which Marion and Vere owned as tenants in common. The Laubs answered that they had bought the property from Vere; and also filed a cross-complaint against Vere for damages for failure to deliver title to the land in accordance with the contract. Upon a trial to the court it gave judgment in favor of Marion for half of the property and water rights; and awarded the Laubs the other half of the

property and water rights, together with damages of $5,000, plus attorney's fees and costs against Vere.

Vere appealed from the judgment in favor of Marion; and the Laubs also appealed, claiming the damages awarded to them were inadequate.

In 1949 Vere and Marion purchased the 80 acres of land (known as the Hunt property), along with its appurtenant water rights, for $14,000. Vere paid the down payment of $2,000 and a loan for the balance of $12,000 was obtained by mortgaging real property in Pine Valley, some of which was owned by Marion and some by Vere.

Marion moved onto this Hunt property and remained there for ten years. It did not prove to be a profitable venture and in the fall of 1959 Marion left the property.

During the years Marion farmed the Hunt property, Vere farmed his own land and also Marion's land in Pine Valley. Marion never received any share of the proceeds from his Pine Valley farm or from the sale of cattle from his herd, which Vere managed. But Vere used those proceeds to make the payments on the purchase money mortgage and to pay the taxes on the Hunt property. The final mortgage payment of $1,575 was made by Marion in January, 1960.

After Marion left the Hunt property in 1959, Vere farmed it for three years and then leased it to another farmer for six years. In December of 1972, he and his wife entered into the contract to sell the property for $20,000 to the Laubs, who began making payments to Vere. When Marion learned of that contract, he filed this suit against Vere and the Laubs, asserting his one-half ownership in the property and seeking partition and an accounting. The Laubs state that they first learned of Marion's claim of ownership when they were served with summons in this suit; and that they then began making their contract pay-

ment check to Vere and Marion jointly. Thereafter Vere endorsed both his own and his brother's names and cashed the checks.

Vere's argument for his ownership and right to sell the land is mainly that the conduct of his brother Marion is such that he should be estopped from claiming otherwise. In support thereof he asserts: that when Marion ceased farming the property and left, he in effect abandoned it, saying he wanted nothing further to do with it, refused to pay any more taxes on it and made the statement that "the State can take it." Marion says he does not remember making this statement. Vere urges that all of the foregoing led him to believe that Marion had abandoned the property to him, and that consequently, he had a right to sell it to the Laubs.

In connection with the foregoing, there was other evidence for the trial court to consider. This includes Vere's admissions: that he had never told anyone that he owned the entire 80 acres; that he did not recall that Marion had ever given him express authority to sell this land; and that he had offered to Marion a sum which he said would be Marion's share of the sale proceeds.

In analyzing those facts, together with the important one that it was Marion who made the final payment of $1,575 to pay off the loan that purchased the property, there are certain legal principles to be had in mind: that where one cotenant seeks to claim ownership of property against another, his claim must have been brought home to the other in some clear and unequivocal manner;[1] and that what he does for the benefit of the property, including the payment of taxes,[2] is deemed to be for the benefit of the cotenant.

Cognate to the foregoing is Vere's argument that in any event Marion should be bound by the contract to sell the property to the Laubs. He says that Marion and his wife, Faye, talked to Vere on several

---

1. *Sperry v. Tolley*, 114 Utah 303, 199 P.2d 542 (1948); *McCready v. Fredericksen*, 41 Utah 388, 126 P. 316 (1912).

2. *Heiselt v. Heiselt*, 10 Utah 2d 126, 349 P.2d 175 (1960).

occasions about offers to sell this Hunt property, which led him to believe that they wanted to sell their interest therein and would approve his doing so. The rejoinder to this, which supports the trial court's ruling to the contrary, is found in Vere's testimony as recited herein, and the further legal principle, correlated to those just stated: that one cotenant cannot convey away or alienate the interest of another cotenant unless he is clearly and properly authorized to do so.[3] From what has just been said, it is obvious that the trial court was justified in its findings and judgment that Marion had not been divested from his ownership of one-half interest in the property.

### Appeal on the Cross-Claim

The Laubs are, of course, satisfied with the trial court's ruling that Vere is bound by the contract to convey them the entire 80 acres upon payment of the $20,000. At the time of trial, they still owed $15,000 on the contract. The trial court analyzed the transactions this way: it awarded the Laubs one half (that is, Vere's 40 acres) of the property; ruled that they were entitled to reduction of one-half the purchase price, $10,000, because they did not get the other half (Marion's 40 acres); and further that they need not pay the remaining $5,000 owing on Vere's 40 acres, because the latter had damaged them to that extent by breaching his contract to convey to them the entire 80 acres.

■■ The main aspect of the Laubs' appeal on their cross-claim is that the judgment just recited had the effect of short-changing them in awarding them only $5,000 damages against Vere for his breach of contract in being unable to convey to them the other half of the 80 acres contracted for. The judge stated as a reason therefor that the Laubs had been neglectful in failing to ascertain the condition of the title, from which they would have learned of Marion's interest. The difficulty with this is that they could properly enter into the purchase contract from Vere, even though the latter did not have full and clear title to the whole 80 acres. He would not be obliged to do so until the purchaser had performed and he then became obligated to make a conveyance.[4] The general rule as to damages in such circumstances is that where a vendor breaches his contract to convey property, the vendee is entitled to the benefit of his bargain;[5] that is, he is entitled to the market value of the property at the time he would be entitled to receive conveyance thereof, less the amount he agreed to pay.[6]

■ There was testimony from a real estate expert that the property with its water rights had been worth the $20,000 in 1972 when the Laubs entered into the purchase contract, but that it had a current value of $70,200. However, in view of the trial court's analysis of the situation, which in effect wiped the slate clean by ordering conveyance of Vere's 40 acres to Laubs, without the Laubs having to pay the remaining $15,000, the trial court made no finding as to the value of the property at the time conveyance should have been made to them. In view of our decision as set forth herein, that the Laubs are entitled to the benefit of their bargain as it would have been if Vere had performed on his contract, it is necessary that there be such a determination and assessment of damages under the rule above stated.

■ The Laubs further complain of being short-changed by the trial court awarding it attorney's fees of only $500 as the "reasonable" fee provided for enforcement of the contract. Their attorney testified that on the basis of the work involved the reasonable amount to award as his attorney's fee

**3.** 86 C.J.S. Tenancy in Common § 119; 20 Am. Jur., Cotenancy and Joint Ownership, Sec. 91.

**4.** *Corporation Nine v. Taylor,* 30 Utah 2d 47, 513 P.2d 417 (1973); *Marlowe Investment Corp. v. Radmall,* 26 Utah 2d 124, 485 P.2d 1402 (1971); *Leavitt v. Blohm,* 11 Utah 2d 220, 357 P.2d 190 (1960); *Woodard v. Allen,* 1 Utah 2d 220, 265 P.2d 398 (1953).

**5.** 77 Am.Jur.2d, Vendor and Purchaser, Sec. 519.

**6.** *Smith v. Warr,* Utah, 564 P.2d 771 (1977); *Bunnell v. Bills,* 13 Utah 2d 83, 368 P.2d 597 (1962); *Andreasen v. Hansen,* 8 Utah 2d 370, 335 P.2d 404 (1959).

would be $800. Even though that evidence is undisputed, the trial judge was not necessarily compelled to accept such self-interested testimony whole cloth and make such an award;[7] and in the absence of patent error or clear abuse of discretion, this court will not disturb his findings and judgment.[8]

On the primary aspect of this case, the judgment in favor of Marion Beckstrom for one half of the property and water rights is affirmed. Costs awarded to plaintiff (respondent).

On the cross-complaint of the *Laubs v. Vere Beckstrom*, the case is remanded for a determination of damages suffered by the Laubs because of the breach of contract by Vere. Costs to cross-plaintiffs and appellants, the Laubs.

MAUGHAN, WILKINS and HALL, JJ., concur.

**ELLETT**, Chief Justice: (concurring with comment).

I concur but wish to state my opinion as to what the damages for the Laubs would be on retrial.

I think the Laubs are entitled to the fair market value of the entire tract of land less the fair market value of the one-half interest awarded to them;[1] also, less the $15,000 unpaid on the purchase contract.

---

7. *Arnold Machinery Company, Inc. v. Intrusion Prepakt Inc.*, 11 Utah 2d 246, 357 P.2d 496.

8. 20 Am.Jur.2d Costs, Sec. 78.

1. No complaint is made as to the partition order.