**In re The CANYON GROUP, LLC, Debtor.**

**Bankruptcy No. 99–11083.**

United States Bankruptcy Court, D. Vermont.

Nov. 24, 1999.

Peter Hall, Reiber, Kenlan, Schwiebert, Hall & Facey, P.C., Rutland, VT, for Bear Hollow Village, LLC., movant.

Rebecca A. Rice, Cohen & Rice, Rutland, VT, for debtor.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.[1]

### I.

### Procedural Background

The matter before the court arises from a single pleading entitled "Motion To Or-

der Debtor–In–Possession To Assume Or Reject Executory Contract And Motion For Relief From Automatic Stay In Bankruptcy" ("the pleading"). The pleading was filed by Bear Hollow Village, LLC ("Bear Hollow") who, as the proposed seller, on July 7, 1998, had entered into a real property contract of sale, entitled Purchase Agreement and Option, later amended by Addendum No. One to Purchase Agreement and Option (together, "the Agreement"), with The Canyon Group, LLC ("the debtor") as the proposed buyer. The real property is described in the Agreement as the "Lodge Parcel, Building 34 ... the parcel containing Building 1C, and the Health Club ... and Tennis Court Parcel" (hereinafter, collectively, "the Hotel Parcel") in a proposed master development known as Bear Hollow Village, located in Summit County, Utah. The real property purchase price was $2,750,000, with the debtor agreeing to construct a hotel and related amenities on the property in conformity with the Bear Hollow Village master development plan. The crux of Bear Hollow's pleading is that the Agreement terminated prepetition because of the debtor's material breaches thereof; primarily, failure to close.

The debtor filed a Chapter 11 petition in this court on August 5, 1999, listing the Agreement as an executory contract. The court, on September 22, 1999, held an initial hearing on the pleading, establishing a briefing schedule and setting a trial date of October 25, 1999.

At the trial, the parties stipulated to various facts and to the evidentiary admission of documents and letters. Further, the parties agreed that the decisive issues to be determined by the court are: one, whether Bear Hollow's 90–day notice to the debtor to close the Agreement was effective; and, two, if so, whether Bear Hollow failed to satisfy the conditions pre-

[1]. Sitting by assignment of the Judicial Council of the Second Circuit.

cedent to the debtor's obligation to close set forth at paragraphs 6b and 6f of the Agreement, thus excusing the debtor's performance.

The parties, citing their joint best interests, requested a prompt determination of the issues by the court. The debtor agreed, if the court were to find the Agreement was an executory contract, to file a motion to assume or reject the Agreement within five days after the entry of an order on the pleading.

## II.

### Facts

The testimony at the trial, in person and by deposition,[2] and the exhibits introduced into evidence establish the following factual background. Bear Hollow was organized around 1996 to develop Bear Hollow Village as a "specially planned" dwelling and commercial village ("the project") to coincide with the advent of the 2002 Winter Olympics in Utah. (Bear Hollow Exh. 69.) The project involved about 174 acres, divided into Phase I, Phase II and Phase III construction. (*Id.*) Phase I included the construction of some 300 residential units and Phase II required the construction of a 100–unit hotel with underground parking. (*Id.*) Bear Hollow became the fee-owner of the entire acreage, subject to a purchase-money mortgage.

After negotiations between Scott Sogard ("Sogard"), the debtor's principal, and Bear Hollow principals, the debtor and Bear Hollow entered the Agreement, providing for the debtor to purchase the Phase II acreage (4.23 acres) and construct the Hotel Parcel. Bear Hollow had retained The Sear–Brown Group ("Sear–Brown") as its engineers to secure zoning and other approvals for the project from the Board of County Commissioners, Summit County, State of Utah ("the County

Commissioners"). Bear Hollow received approvals to commence the project by way of the passage of Summit County Ordinance Nos. 337 and 338 on July 27, 1998, and entering into the Development Agreement for the Bear Hollow Village Specially Planned Area Plan (the "Development Agreement"). (Bear Hollow Exh. 69.) Santiago Loaiza ("Loaiza") was the engineer at Sear–Brown in charge of the project.

The debtor, following execution of the Agreement, also retained Sear–Brown to provide the engineering and related services which the debtor needed to obtain the permits required under its obligations to construct the Hotel Parcel. Loaiza had nearly completed the necessary drawings and documents required for the County Commissioners' approval, when he ceased the process because the debtor had failed to pay overdue Sear–Brown invoices after repeated requests. Loaiza testified that at the time Sear–Brown stopped its work for the debtor, Bear Hollow's project obligations were sufficiently completed for receipt of the County Commissioners' approval to commence Phase II. Bear Hollow's remaining substantive obligation to proceed with the project, as set forth in the Agreement, was the receipt of the purchase price from the debtor so that Bear Hollow could obtain a release of the purchase-money mortgage in order to convey the Phase II acreage to the debtor.

The parties further stipulated to the following facts or the documents establishing such facts: (i) that the Agreement (Bear Hollow Exhs. 4 and 5) was integrated and unambiguous; (ii) that by letter dated January 19, 1999, Bear Hollow advised the debtor that closing would be in "90 days ... or as soon thereafter as possible" (Bear Hollow Exh. 14); (iii) that by letter dated March 25, 1999, the debtor advised

---

2. Included as trial testimony is the transcript of the October 11, 1999 Santiago Loaiza deposition, which was entered into evidence as Bear Hollow Exh. 70. The debtor submitted written objections to certain portions of such deposition testimony. The debtor's objections are overruled in their entirety by separate order.

Bear Hollow that it could not close on or near April 20, 1999 and requested a new 90 day notice (Bear Hollow Exh. 16); (iv) that by letter dated March 29, 1999, Bear Hollow advised the debtor that closing would be May 24, 1999 as an accommodation to the debtor (Bear Hollow Exh. 17); (v) that the parties did not consummate the Agreement by May 24, 1999 (or any date thereafter); and (vi) that by letter from Joseph E. Tesch ("Tesch"), Bear Hollow's attorney, to Richard W. Evans ("Evans"), the debtor's attorney, dated June 3, 1999, Bear Hollow advised the debtor that Bear Hollow deemed the debtor in material breach of the Agreement and that Bear Hollow's "obligations" under the Agreement "is [sic] terminated." (Bear Hollow Exh. 25.)

Tesch testified that during several conversations in May 1999 with Evans, Evans conceded that the debtor had no available funds to purchase the property by June 1, 1999. In Tesch's June 3, 1999 letter to Evans, Tesch noted (1) that the debtor had failed to close on June 1, 1999, (2) that the debtor had "repeatedly advised" Bear Hollow "that it cannot close as required since it does not have the necessary funds" and (3) that the debtor "had failed to obtain the necessary governmental approvals and permits to allow it to break ground by June 1, 1999." (Bear Hollow Exh. 25.)

Paul Torjesen ("Torjesen"), the debtor's construction manager, and the debtor's sole witness at the hearing, testified that he was advised by Loaiza that Bear Hollow had not completed sufficient construction in Phase I to permit Phase II construction to begin. Bear Hollow's witnesses, Lawrence J. Franciose ("Franciose"), Bear Hollow's managing member, and Loaiza, testified to the contrary.

The debtor did not argue or offer any evidence that it had performed its obligations under the Agreement; rather, the debtor argued that its performance was excused by Bear Hollow's alleged failures with regard to notice and conditions precedent.

## III.

### *Discussion*

#### *The 90–Day Notice*

■ The Agreement called for a closing on 90 days written notice (Bear Hollow Exhs. 4, ¶ 4, and 5, ¶¶ 4 and 7), and Tesch's letter of January 19, 1999 gave the debtor exactly 90 days notice. That date was only changed in response to the debtor's request contained in Evans' letter of March 25, 1999. The debtor's argument, initially through the March 25, 1999 Evans' letter, and then in response to the pleading, is that Tesch's notice was insufficiently certain and thus ineffective because the notice stated that closing would be in "90 days ... *or as soon thereafter as possible* ". (emphasis added.)

The debtor's argument is not tenable. The Agreement makes clear that the notice period was for the debtor's benefit. Indeed, the Agreement provides "BHV will give Canyon 90 days written notice of its scheduled date of closing of ownership of the Phase II Parcels (the 'Closing Date') *to enable Canyon to secure its funds....* " (emphasis added.) Furthermore, Evans' March 25, 1999 letter refers in several passages to the need for timely notice so that the debtor can raise the required funds for closing. The debtor cannot request adjournment and then argue that a new 90–day period is required. *Cf. Corporation Nine v. Taylor,* 30 Utah 2d 47, 513 P.2d 417, 421 (1973) (a breaching party cannot rely on its failure to perform as its excuse for not performing). The court finds no merit in the debtor's argument.

#### *Condition Precedent—Paragraph 6b*

■ The condition precedent to the debtor's obligation to close found in paragraph 6b of the Agreement provides in relevant part that the "[s]ubject premises must have a good, and clear record and market fee simple title *which shall mean title free and clear of liens, easements, restrictions[,] encumbrances....* " (emphasis added.) The debtor argues that at

the time of the closing scheduled by Bear Hollow, Bear Hollow could not convey title free of "restrictions", asserting that Bear Hollow had not satisfied the "50% built" phasing requirement of the Development Agreement with the County Commissioners, thus precluding commencement of work on Phase II.

Restrictions on title, typically, are found in the chain of title and, thus, recorded. For instance, in *Callister v. Millstream Assoc., Inc.*, 738 P.2d 662 (Utah App.1987), the purchaser of real property was entitled to rescind the agreement to purchase which called for conveyance of title free and clear of liens and encumbrances when it was discovered at closing, apparently from a title report, that a recorded covenant restricted the number of units that could be built on the property. Assuming *arguendo* that Bear Hollow had failed to meet conditions of the Development Agreement, the debtor has not offered any legal citation or evidence to demonstrate that such failures would be a restriction on title.

Even were there a "50% built" restriction on title, the court finds that Bear Hollow met the "50% built" requirement of the Development Agreement. The court credits the testimony of Franciose and Loaiza, each of whom testified from first-hand knowledge on that point. In contrast, the debtor's only witness, Torjesen, testified to the contrary based on information he alleged to have obtained from Loaiza—which Loaiza disputed.

In sum, the court determines that the debtor has not proven that any restriction on title existed which relieved the debtor from its obligation to close as required by the Agreement. Further, the court finds based on the testimony presented at trial that Bear Hollow had satisfied the Development Agreement's "50% built" condition to commencing Phase II development.

### Condition Precedent—Paragraph 6f

■ The condition precedent to the debtor's obligation to close found in paragraph 6f of the Agreement provides in relevant part that "[a]ll Approvals and Agreements shall be in full force and effect, and Seller shall not be in a material default of its obligations thereunder." The debtor argues that it was relieved of its obligation to close because Bear Hollow has not presented evidence that it has obtained all required "Approvals." The debtor has made no argument and presented no evidence that Bear Hollow was or is in material default of any Approval and Agreement.

First, the court notes that the phrase "Approvals and Agreements" is defined in paragraph 2 of the Agreement as both "Completed" and "Uncompleted" Approvals and Agreements, which, in turn, refer to "purchase agreements, development approvals, tax incentive formats, surveys, engineering studies, plats, water and utility contracts, local and county development agreements, including without limitation the [Development Agreement]". From that definition, the court cannot conclude that any Approvals and Agreements would or would not have to be completed in order to meet the condition of paragraph 6f. Furthermore, based on the record before the court, until the commencement of the instant proceeding, the debtor never alleged any failure to obtain, or requested evidence that Bear Hollow had obtained, any Approval or Agreement. Paragraph 6f does not require that Bear Hollow affirmatively present the debtor with any evidence regarding the condition prior to or at closing. The court credits the testimony of Loaiza that Phase II-related permits could have been obtained in a matter of days (about the time of closing), but were delayed by Bear Hollow solely because of the debtor's failure to close and its statements that it could not close because it lacked funding.

In contrast to the lack of specificity of paragraph 2's "Approvals and Agreements", paragraph 9 of the Agreement sets forth certain obligations of Bear Hollow with specificity: "BHV shall provide

roadways, water, sewer, electrical lines, natural gas and telephone lines to the boundaries of the Subject Premises within 4 months of the Closing Date."[3] The court concludes that were the approval to proceed to the construction of Phase II intended as the seminal event for performance by the debtor of its obligations under the Agreement, then such term should have been set out with specificity in the Agreement—like the obligations found in paragraph 9. It is nowhere to be found, however. In that regard, the court notes that the parties stipulated that the Agreement is an integrated document. The law of integration is thus:

> If a contract is determined to be integrated, the parole evidence rule excludes evidence of terms in addition to those found in the agreement. If the contract is in writing and the language is not ambiguous, the intention of the parties must be determined from the words of the agreement.

*Hall v. Process Instruments and Control,* 866 P.2d 604, 606 (Utah App.1993).

The court finds that Bear Hollow did not fail to meet any condition precedent to closing set forth in paragraph 6f of the Agreement. Thus, the court determines that the debtor was not relieved of its obligation to close and Bear Hollow justly terminated the Agreement upon the debtor's failure to close.

### Anticipatory Breach

■ The court determines that even were Bear Hollow unable to meet certain conditions precedent at the time it scheduled for closing in accordance with the Agreement, Bear Hollow's failure would be relieved by the debtor's anticipatory breach of the Agreement.

■ In Utah, a party is in anticipatory breach of an agreement when "[i]t manifests a positive and unequivocal intent to not render its promised performance when

the time fixed for it in the contract arrives". *Breuer–Harrison, Inc. v. Combe,* 799 P.2d 716, 724 (Utah App.1990). Furthermore,

> Tender is excused where it is plain and clear that a tender, if made, would be idle ceremony and of no avail ... Additionally, where the unreasonable conduct of the obligee would make an actual tender a fruitless gesture, an offer to comply with the terms of the contract by the obligor is sufficient.

*Shields v. Harris,* 934 P.2d 653, 655 (Utah App.1997).

■ The credible evidence in this case, through the uncontested testimony of Bear Hollow's witnesses, is that the debtor advised Bear Hollow well in advance of June 1, 1999 that it could not and would not soon be able to perform its closing obligations under the Agreement. Indeed, it was the debtor's anticipatory breach of the Agreement that prohibited Bear Hollow from obtaining possession of the Phase II property, free and clear of the purchase money mortgage—a closing condition. A breaching party cannot rely on its failure to perform as its excuse for not performing: "... the buyer himself should not be heard to complain when it is his own default which is preventing fulfillment of the contract." *Corporation Nine,* 513 P.2d at 421.

### IV.

### Conclusion

Bear Hollow justly terminated the Agreement on June 3, 1999. The court does not find that the debtor was excused from performing by ineffective notice or any conditions precedent in the Agreement. Accordingly, under the terms of the submission of the matter to the court, the court grants Bear Hollow relief from

---

**3.** Franciose testified at trial that he had obtained the necessary permits for such work from Summit County by June 16, 1999—3½ months before Bear Hollow was required to complete this work.

stay to proceed as if the Agreement had been terminated prepetition. It is

SO ORDERED.