**MARK STEEL CORPORATION, Plaintiff and Appellant,**

v.

**EIMCO CORPORATION and Eimco Tunneling and Mining Machinery, Division of Envirotech Corporation, Defendants and Respondents.**

**No. 14208.**

Supreme Court of Utah.
April 8, 1976.

---

Horace J. Knowlton, Salt Lake City, for plaintiff-appellant.

Brent M. Stevenson and Robert M. Anderson, Salt Lake City, for defendants-respondents.

MAUGHAN, Justice:

On appeal is a judgment of the district court denying recovery to a lessor for the cost of increased insurance premiums, which the lessor claimed was the result of the use to which the lessee put the leased premises. We affirm the judgment.

Prior to April 1967, defendant operated a plastics manufacturing business in a portion of the subject premises, then owned and leased by one Horman. At that time defendant was informed by the lessor that additional space would shortly be available. Defendant expressed a desire to establish a fiberglass manufacturing business on the premises, in addition to its plastics business.

The lessor made certain changes to accommodate the fiberglass business, and on the first of April 1967, both parties participated in drawing the lease, which is the subject of the instant litigation. Defendant occupied the premises under this lease for the five-year term plus two one-year extensions.

In January 1971, plaintiff purchased Horman's interest in the real estate, and took an assignment of his interest in the lease. Horman, up to July 26, 1971, provided insurance for the premises under a policy with Manufacturers Mutual Insurance Company, which covered the subject premises and others. Horman would bill plaintiff for his share of the premiums, as they related to the subject premises. Horman's insurance company cancelled the policy on July 26, 1971; and plaintiff was compelled to secure other insurance, the rate for which was higher than that theretofore paid. It is for this difference that plaintiff sued.

Plaintiff makes its case on paragraph 9 of the lease, which is as follows:

Lessee shall not occupy or use the premises, or any part of it, for any purpose not authorized by this lease, nor make or permit any use of the premises which, directly or indirectly, is forbidden by law, ordinance, or governmental or municipal regulation or order, or which may be dangerous to life, limb, or property, or which increases the premium cost of or invalidates any policy of insurance covering or carried on the premises or the building or the operation of them, or of either of them, or any part or appurtenance thereof. In case of any increase in premium cost resulting from Lessee's making or permitting any such use, Lessee shall pay Lessor the amount thereof without prejudice to any other right or remedy of Lessor on account of that or any other breach of Lessee's obligations under this lease.

Paragraph 1 of the lease provides:

. . . said building area shall be occupied and used by Lessee for the operation therein of a manufacturing and warehouse business.

It is the contention of plaintiff that paragraph 9 makes the lessee responsible for any increase in insurance premiums resulting from acts of the lessee, on the premises. Defendant contends lessee would be responsible for increased premiums only if such were caused by an unauthorized use of the premises, and not for any use expressly authorized by the lease—this position is well taken.

■ The primary rule in interpreting a contract is to determine what the parties intended by what they said. We do not add, ignore, or discard words in this process; but attempt to render certain the meaning of the provision, in dispute, by an objective and reasonable construction of the whole contract.[1]

■ The second sentence of paragraph 9 makes the lessee responsible for any increase in premium costs "resulting from Lessee's making or permitting any such use, . . ." "Any such use" equates with a breach of the lessee's obligation which can be summarized as unauthorized, unlawful, and perilous uses. The sentence has the effect of saying that, if the insurance premiums are raised, because of "any such use" or on account of "that [any such use] or any other breach of lessee's obligations," lessee will then pay for the increased premiums. It would be an anomaly to hold that the use to which the parties agreed the building could be put constituted a breach of the same agreement. For a similar and illustrative case see *Hagopian v. Brandon*, 203 Misc. 570, 116 N. Y.S.2d 799 (1952).

■ There was evidence to show the premises were used for the manufacturing of fiberglass, prior to the time of the sale to plaintiff. The use of the premises was the same both before and after the transaction, between Horman and plaintiff. There was no evidence to indicate that Horman was charged greater premiums by his insurer after defendant commenced its fiberglass operations.

The court found the increase in insurance rates to be caused by the change of ownership of the premises or the change in insurance carriers, or cancellations of the insurance by the original carrier; that there was no evidence to indicate the use made of the premises at any time during its occupancy caused an increase in the premiums; and concluded, as a matter of law, the use and occupancy of defendant was that contemplated by the parties when they made the agreement. The court also found there was no breach of the agreement by defendant. There was evidence to sustain these findings.

HENRIOD, C. J., and ELLETT, CROCKETT, and TUCKETT, JJ., concur.

---

1. *Cornwall v. Willow Creek Country Club*, 13 Utah 2d 160, 162, 369 P.2d 928 (1962).