**TURTLE MANAGEMENT, INC., a Utah corporation, Plaintiff and Appellant,**

v.

**HAGGIS MANAGEMENT, INC., a Utah corporation, Howard W. Landa, Terrell W. Smith, Steven P. Strasser and John Landon, Defendants and Respondents,**

**HAGGIS MANAGEMENT, INC., a Utah corporation, Counter-Plaintiff and Respondent,**

v.

**TURTLE MANAGEMENT, INC., a Utah corporation, Counter-Defendant and Appellant.**

No. 17194.

Supreme Court of Utah.

April 8, 1982.

---

R. Dennis Ickes, Salt Lake City, for plaintiff and appellant.

Peter M. Ennenga, Ellen Maycock, Salt Lake City, for defendants and respondents.

DURHAM, Justice:

Turtle Management initiated this action to secure injunctive relief and damages for violation of a covenant not to compete and tortious interference with its business. On appeal, plaintiff/appellant contends the dis-

trict court erred in awarding only nominal damages and in restricting the award of attorney's fees to reflect the limited relief secured: nominal damages and entry of an injunction against only one defendant, John Landon. Defendants/cross-appellants contend on appeal that all the relief secured by plaintiff was inappropriate. In addition, they claim plaintiff defaulted on the contract for sale of a business by making installment payments to the clerk of the district court pursuant to an order under Rule 67, Utah R.Civ.P. rather than making those payments to the defendants.

Haggis Management, Inc., was the management company for The Haggis, a private club which began operation in downtown Salt Lake City in 1976. During the spring of 1978, Geoffrey Meacham began negotiations with certain principals of Haggis Management, Inc., for the purchase of the assets of The Haggis by Turtle Management, Inc. Documents and records reviewed by Meacham during the negotiations revealed an average monthly gross of approximately $63,000 and indicated that the heaviest business was during the fall and winter months.

On or about July 7, 1978, four documents were executed effecting the transfer of the assets of The Haggis to Turtle Management. Howard Landa and Geoffrey Meacham, representing Haggis Management and Turtle Management respectively, executed an agreement which conveyed ownership of the assets of The Haggis to Turtle Management for a total purchase price of $350,000, effective August 1, 1978. Eighty-five thousand dollars was to be paid in cash in two installments prior to August 30, 1978, and a payment of $15,000 was to be made by Turtle Management to Haggis Management on January 2, 1979. The second and third documents executed on July 7, 1978, were a promissory note and a related security agreement from Turtle Management to Haggis Management in which Turtle Management agreed to pay the sum of $250,000 at 7% interest in monthly installments of $4,950.25 commencing September 1, 1978. The fourth document executed at that time was a "Covenant Not To Compete And Non-Competition Agreement," which was executed for the benefit of Turtle Management, Inc., by Haggis Management, Inc., through Howard Landa and individually by Howard Landa, John Landon, Terrell Smith and Steven Strasser, the officers and directors of Haggis Management, Inc. The Covenant Not To Compete was incorporated by reference into the basic sales agreement. It prohibited the named parties from participating personally or through agents in any business which competed directly or indirectly with Turtle Management as a private club. The agreement applied to Salt Lake County for 5 years and Summit County for 2 years. The agreement for the sale of the assets also provided that the cost of enforcing the agreement, including a reasonable attorney's fee, should be borne by the party in default.

During the period from November of 1978 to May of 1979, John Landon worked as a day manager at the Silver King, a private club in Park City, Utah, two days a week. Landon also provided advice on the operation of the club, including suggestions as to interior design, the ordering of equipment and supplies, and recommendation as to hiring of employees. Several former Haggis employees were employed by the Silver King and patrons of The Haggis also patronized the Silver King. Among those who patronized the Silver King were Terrell Smith and Steven Strasser.

On January 5, 1979, Turtle Management, Inc., filed this action and alleged in three counts that (1) there was a violation of the covenant not to compete, (2) defendants had tortiously damaged the business of Turtle Management by enticing employees from The Haggis to work for the Silver King, and (3) defendants had failed to pay certain accounts payable as required by the sales agreement. Turtle Management requested and received an ex parte order directing Turtle Management to pay the $15,000 owed to Haggis Management as of January 2, 1979, and each monthly payment of $4,950.25 thereafter directly to the clerk of the court, beginning with the payment due January 1, 1979. Defendants answered, de-

nying each cause of action, and in a counterclaim alleged a default of the sales agreement and promissory note because of failure to pay the $19,950.25 due in January of 1979.

Count 3 of the complaint was withdrawn by Turtle Management at the time of the trial. At the conclusion of the plaintiff's case, on the defendants' motion, the district court dismissed counts 1 and 2 as to all defendants except John Landon. At the conclusion of the trial, the district court found that John Landon had violated the covenant not to compete and enjoined Landon from any further activity at the Silver King until August 1, 1980. Nominal damages of $1.00 were awarded in favor of the plaintiff. Defendant's counterclaim was dismissed and the funds held by the clerk of the court were ordered to be distributed to defendant Haggis Management, Inc. The district court awarded attorney's fees to the plaintiff of $500 plus $61.70 in costs, limiting the award of attorney's fees to those reasonable fees associated with securing injunctive relief against John Landon.

Turtle Management argues on appeal that since it proved a breach of the contract, it is entitled to compensatory damages for Landon's violation of the covenant not to compete. Plaintiff further contends that the court erred in not giving appropriate weight to its evidence concerning gross receipts and projected profits for the operation of The Haggis as a basis for awarding substantial damages. Plaintiff claims a loss of business and decline in gross receipts in comparison to the previous year.

■ In order to receive the kind of substantial damages which plaintiff claims, it must satisfy a three-part test in an action based upon a contract. First, plaintiff must establish that a legal right has been invaded. Second, plaintiff must prove to the factfinder by a preponderance of the evidence that there is a causal connection between the legal wrong suffered and the damages claimed. *Gould v. Mountain States Telephone and Telegraph Co.*, 6 Utah 2d 187, 193, 309 P.2d 802, 805 (1957); *Terry v. Panek*, Utah, 631 P.2d 896, 897 (1981).

Third, plaintiff must demonstrate the amount of damages with sufficient certainty to permit the factfinder to make an award, although the damages need not be proven with precision. *Winsness v. M. J. Conoco Distributors, Inc.*, Utah, 593 P.2d 1303, 1305 (1979); 5A Corbin, Contracts, § 1022 (1964). Nominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the amount of damages has not been proven. *Gould*, 6 Utah 2d at 193, 309 P.2d at 805; *Thompson v. Anderson*, 107 Utah 331, 336, 153 P.2d 665, 667 (1944); 22 Am.Jur.2d *Damages* § 9 (1965).

■ It is clear from the record that the district court found that Turtle Management failed to satisfy the second step of the three-step process set out above. The district court stated at the conclusion of the trial that there was insufficient evidence to show by a preponderance of the evidence that employment of Landon at the Silver King took any clientele away from The Haggis. The district court stated in its Findings of Fact that the Silver King's patrons were comprised primarily of high-turnover tourists and approximately 1% of the total customer flow was comprised of former patrons of The Haggis. The trial court's conclusions in this regard are supported by substantial evidence in the record and will not be disturbed by this Court. *Horman v. Lloyd*, 28 Utah 2d 112, 499 P.2d 124 (1972).

Plaintiff's reliance on *Gould, supra*, to support its claim that damages cannot be denied because they are speculative is misplaced. The principle set forth in *Gould* is that substantial damages cannot be awarded when there is uncertainty regarding the causal connection between the wrong and the damage suffered. *Gould*, 6 Utah 2d at 193, 309 P.2d at 805; *Terry*, 631 P.2d at 897. Where plaintiff has demonstrated a legal wrong but failed to establish a causal connection between the wrong and the alleged damages, the award of nominal damages in the amount of $1.00 is appropriate. *See Snyderville Transportation Company v. Christiansen*, Utah, 609 P.2d 939 (1980).

Turtle Management also contends on appeal that the trial court erred in awarding only $500 in attorney's fees. Turtle Management argues that because it was bound by Rule 18 of the Utah R.Civ.P. to include all possible claims against all defendants in a single action, it should be awarded the attorney's fees expended in prosecuting its claim against all defendants because of its success against a single defendant, John Landon. Plaintiff further argues that the court impermissibly took into account that plaintiff's only relief was an injunction against John Landon and recovery of nominal damages.

■ Utah adheres to the well-established rule that attorney's fees generally cannot be recovered unless provided for by statute or by contract. *B & R Supply Company v. Bringhurst*, 28 Utah 2d 442, 503 P.2d 1216 (1972).[1] If by contract, the award of attorney's fees is allowed only in accordance with the terms of the contract. 25 C.J.S. *Damages* § 50 (1966). The amount to be awarded as attorney's fees is generally within the sound discretion of the trial court. *Yreka United, Inc. v. Harrison*, Idaho, 510 P.2d 775, 780 (1973). This Court has upheld an award of attorney's fees where the amount does not appear to be unreasonable. *Parkinson v. Amundson*, 122 Utah 443, 250 P.2d 944 (1952). In the absence of abuse of discretion, the amount of the award by the district court will not be disturbed. 20 Am.Jur.2d *Costs* § 78 (1965).

■ Several factors have been considered by various courts in determining the appropriate award of attorney's fees: the relationship of the fee to the amount recovered, the novelty and difficulty of the issues involved, the overall result achieved, and the necessity of initiating a lawsuit to vindicate the rights in the contract. 58 A.L.R.3d 235 (1974); 20 Am.Jur.2d *Costs* § 78 (1965); 25 C.J.S. *Damages* § 50 (1966). The district court appropriately took into account factors such as the complexity of the issues involved and the results achieved in awarding the attorney's fees.

■ Finally, the operative clause of the sales agreement provides: "The cost of enforcing this agreement including a reasonable attorney's fee should be borne by the party in default." The only party in default was John Landon and the district court's award of attorney's fees correctly reflected that limited result. If the plaintiff's position were to prevail, John Landon, as the only party against whom a judgment was entered, could be required to pay attorney's fees associated with the prosecution of claims against parties found not to be in default. Alternatively, attorney's fees might be assessed against all the defendants. The exonerated defendants would be paying attorney's fees when they were found not to be in default. Either result would not be in conformance with the terms of the contract. When a plaintiff has a substantial claim against one defendant, he should not have a free ride to assert claims against other defendants with the expectation that the target defendant will end up paying all attorney's fees, even those related to unsuccessful and perhaps frivolous claims.

Defendants, on cross-appeal, claim that the court erred in failing to enter judgment on their counterclaim. Defendants claim the plaintiff was in default because it had paid ten payments to the clerk of the court and failed to make those payments to Haggis Management, Inc., as required by the

---

1. § 78-27-56 Utah Code Ann. (1953), enacted in 1981, provides for the award of attorney's fees in civil actions "if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." The effective date of the statute is May 12, 1981, and therefore it is not applicable to actions in which judgment has been entered before that date. There is an additional basis for attorney's fees in some special cases, known as the "common fund" or "equitable fund" doctrine, which has never been commented upon in the Utah cases, presumably because it was inapplicable. Under this doctrine, the fee of an attorney whose services create, increase, or preserve a fund or property to which others may also have a claim may be paid therefrom by order of a court of equity. See 7A C.J.S. *Attorney & Client* § 334. This doctrine likewise has no applicability to the instant case.

terms of the sales agreement and the promissory note. The payments to the clerk of the court by Turtle Management were directed by an order entered on January 5, 1979, pursuant to Rule 67, Utah R. of Civ.P. The order stated that "such deposits shall discharge any liability the plaintiff may have to defendants to the extent of amounts thereof." On January 24, 1979, defendants filed a motion to modify the order to delete the language discharging the plaintiffs from liability to the extent of the deposits. This Court cannot find an order in the record so modifying the January 5, 1979 order and the defendants did not direct the attention of this Court, or the district court, to any such modification.

The question of whether this was an appropriate order under the provisions of Rule 67 is not before this Court. Therefore, we conclude that the actions of the plaintiff in depositing those funds with the clerk of the court pursuant to that order does not constitute a default and the district court's dismissal of the counterclaim was correct.

The defendants also claim on appeal that the trial court erred in finding a violation by John Landon of the covenant not to compete. In the notice of appeal, the defendants state two bases for this claim: (1) the covenant was unduly restrictive and therefore not enforceable and (2) plaintiff waived any such breach. The question of waiver was presented to the trial court and the court found there was no written waiver. The evidence in the record supports this conclusion which will not be disturbed by this Court. *Horman v. Lloyd, supra.* The defendants' contention that the covenant not to compete was contrary to public policy was raised as a defense in their answer, but no argument was made to the district court on this issue and no evidence was presented. This Court will not consider on appeal issues which were not submitted to the trial court and concerning which the trial court did not have the opportunity to make any findings of fact or law. *Shayne v. Stanley & Sons, Inc.,* Utah, 605 P.2d 775 (1980); *Lamkin v. Lynch,* Utah, 600 P.2d 530 (1979); *Edgar v. Wagner,* Utah, 572 P.2d 405

(1977); *Utah State By and Through Road Commission v. Larkin,* 27 Utah 2d 295, 495 P.2d 817 (1972).

Affirmed. No costs awarded.

HALL, C. J., OAKS and HOWE, JJ., and DAVID B. DEE, District Judge, concur.

STEWART, J., having disqualified himself, does not participate herein. DEE, District Judge, sat.