Meldrum L. SEARS and Maurine L.
Sears, Plaintiffs and Appellants,

v.

Walt A. RIEMERSMA, Defendant
and Respondent.

No. 17768.

Supreme Court of Utah.

Sept. 3, 1982.

Neil R. Olmstead/Michael F. Olmstead, Ogden, for plaintiffs and appellants.

Jack L. Schoenhals, Salt Lake City, for defendant and respondent.

DURHAM, Justice:

Plaintiffs Meldrum L. Sears and Maurine L. Sears (appellants), appeal from a judgment dismissing their cause of action and awarding judgment on the counterclaim of defendant, Walt A. Riemersma (respondent). They alleged that the respondent defaulted on a 1958 real estate contract and requested a reconveyance of the subject property. The respondent denied any default and claimed he tendered the total amount due for the property in the spring of 1979. In a counterclaim, he requested that the appellants be ordered to accept the tender of payment and release all mortgages against the subject property. We affirm the judgment of the trial court.

The appellant and the respondent entered into a real estate contract and a separate exclusive sales agreement on August 9, 1958. The real estate contract provided for the appellants to sell approximately 15 acres in Ogden, Utah, to the respondent for a total purchase price of $40,000. The respondent paid $3,000 down with the balance secured by a promissory note and a mortgage on the property. The contract provided that the respondent could divide the property into fifty to fifty-five lots in two or more additions. A timetable was set up under which the respondent was to pay for the lots and construct homes. The mortgage was to be released on a lot-by-lot basis

as each lot was paid for by the respondent. The contract further provided that the appellants could reserve not more than five lots from the terms of the sale. The appellants were to reimburse the respondent for the cost of the improvements in the subdivision allocated to the lots reserved by the appellants.

The respondent divided the property into two additions and in May of 1959, executed and delivered to the appellants a promissory note for $22,000 and a mortgage in exchange for conveyance of the property in Addition No. 1. Fourteen years elapsed before houses were built and sold on all the lots in the first addition. In May of 1973, the original promissory note was retired and a new promissory note for $12,250 and mortgage were executed and delivered by the respondent to the appellants in exchange for conveyance of the property in Addition No. 2. The events at issue in this suit have to do with the second promissory note and mortgage. In 1976, five lots were reconveyed to the appellants by the respondent at the appellants' request. In March of 1979, the respondent sent the appellants a cashier's check for the amount remaining due on the 1973 promissory note, including interest. The appellants refused the tender of the payment and refused to release the mortgage on the remaining property in Addition No. 2. Appellants requested a reconveyance of the property as provided for under the contract in the case of the buyer's default. The respondent refused to reconvey the property and the appellants filed this action.

The keystone in the judgment constructed by the trial court is its interpretation of the basic contract for the sale of this property. The trial court found that this was essentially a contract for the sale of real estate. An "exclusive sales agreement" signed contemporaneously by the parties in 1958 was a separate agreement which gave the appellants the right to market the lots and houses but did not impose any additional obligations on the respondent other than those found in the real estate contract itself. The trial court found that the provisions in the real estate contract for periodic payments as each lot was taken and built on by the respondent were simply a method for payment which accommodated the respondent's financial requirements as a contractor. The trial court further found that the promissory note could be prepaid at any time. Therefore, once complete payment was made, the appellants were required to release the mortgage on the property and no claim remained for reconveyance.

The appellants urge a different interpretation of the contract. They argue that the respondent is required to "pay $40,000 and do something." This "something" which the respondent is required to do is subdivide and develop the property in accordance with an alleged timetable set out in the contract. In this case, the appellants claim the respondent may have tendered the final payment on the $40,000 purchase price, but has failed to adhere to the other provisions of the contract, specifically, the requirement to proceed with the street and utility improvements on Addition No. 2.

The 1959 real estate contract was prepared by the appellants' attorney and presented to the respondent after some preliminary negotiations for ratification. The well-established rule in Utah is that any uncertainty with respect to construction of a contract should be resolved against the party who had drawn the agreement. *See, e.g., Matter of Estate of Orris,* Utah, 622 P.2d 337 (1980); *Wagstaff v. Remco, Inc.,* Utah, 540 P.2d 931 (1975). In regard to agreements which provide for the partial release of a mortgage on specific lots or parcels, it has generally been held that the release provisions should be interpreted more strongly against the party required to give the release, *i.e.,* the mortgagee. *See Annot.,* 41 A.L.R.3d 7 (1972).[1] The primary

---

1. *Contra see: Watson v. Poe,* Fla.App., 203 So.2d 14 (1967). That court held that the release provision should be construed more strongly against the party using the language and for whose benefit the language was inserted in the instrument. Usually, as here, the clause is put in for the benefit of the purchaser-

rule in interpreting a contract is to determine what the parties intended by looking at the entire contract and all of its parts in relation to each other, giving an objective and reasonable construction to the contract as a whole. *See Mark Steel Corp. v. Eimco Corp.*, Utah, 548 P.2d 892 (1976); *Thomas J. Peck & Sons, Inc. v. Lee Rock Products, Inc.*, 30 Utah 2d 187, 515 P.2d 446 (1973); *Cornwall v. Willow Creek Country Club*, 13 Utah 2d 160, 369 P.2d 928 (1962).

▰ Our examination of the contract in its entirety reveals that the contract contains two covenants. In paragraph 1, the buyer agrees that he will pay to the seller $40,000 for the described property. In paragraph 4, the contract further states that $40,000 is the agreed value of the land as unimproved real property, indicating that the parties intended the $40,000 as consideration for the purchase of the property itself. The contract further states, in paragraph 3, that the respondent/buyer contemplates construction of approximately 40–50 houses on the property and:

> [T]he sale and *purchase of the property is subject to the sale of the houses to be constructed* thereon by the Buyer; therefore, Buyer agrees that he will forthwith and without expense to the Seller have the above described property surveyed and prepare a master plan for the subdividing into building lots of said property and will submit the subdividing plans so prepared by him to the Seller for his approval. When the same has been approved by the Seller, Buyer will submit said plans to all proper authorities for their approval thereof.

(Emphasis added.) This indicates the intention of the parties to make further provision in the contract for the manner and timing of payment of the purchase price by the respondent. These provisions are found in paragraphs 4 through 9, which set out the specific timetables for improvements and building on the lots. Those paragraphs serve as a schedule for repayment of the promissory note and release of the mortgage on a lot-by-lot basis. The appellants

claim this timetable for improvements is a binding obligation on the respondent that is not extinguished by prepayment of the balance due on the promissory note. We agree with the trial court's finding that this is "basically a contract for the sale of real property and the provisions in the contract for the payment of the contract related to the manner and method of payment."

▰ Subsequent to the execution of the promissory note and mortgage related to the property in Addition No. 2, the respondent had the property surveyed, subdivided and approved by the appropriate authorities. This was the respondent's consideration for the continued operation of those paragraphs of the contract which permitted him to pay off the new promissory note on a lot-by-lot basis. Paragraph 7 provides that "upon payment of said purchase price, Seller will immediately execute and deliver to Buyer a partial release of mortgage releasing from the terms of the mortgage theretofore given Seller the lots for which the purchase price is paid by the Buyer." The appellants testified that the respondent could prepay all amounts due for lots not yet released at any time without penalty. The trial court found, and we agree, that the tender in March of 1979 of the total amount due on the 1973 promissory note was an option available to the respondent and triggered the appellants' obligation to release the mortgage on the remaining lots in Addition No. 2.

This interpretation of the contract is bolstered by the provisions in paragraph 13. The appellants have the option upon default by the respondent to request that the respondent "forthwith deliver to seller [appellant] title to all lots previously conveyed to him and upon which no construction had been commenced." The appellant "may also, at his option and as an alternative remedy, specifically enforce this agreement and require buyer [respondent] forthwith to purchase all the remaining lots within the above described property." This paragraph further illustrates the intent of the parties

mortgagor and designed primarily to address his financial needs.

that this was basically a contract for the sale of the property, a transaction which would be fully consummated by the purchase of all lots within the described property by the respondent, whether through his own initiative or by implementation of the appellants' right to demand specific enforcement of the respondent's obligations.

The appellants contend that the respondent had an affirmative obligation under the contract to construct the street and utility improvements on the subdivisions and build houses. The contract nowhere speaks of any such obligation. The timetables set forth in the contract for making improvements and building houses are a protection for the appellants to facilitate payment under this particular payment plan. If the respondent failed to build houses, put in improvements and make appropriate payments as described in the timetables, the appellants could claim default just as any other mortgage claims default for failure to make monthly payments under a standard repayment schedule.

■ The appellants object to the trial court's finding of fact that the respondent's delays in proceeding with the improvements on Addition No. 2 were not solely due to the respondent's activity and that a substantial part of the delay was due to the appellants' activities. The trial court specifically found that part of the delay was due to the parties' inability to arrive at an agreement over the allocation of the costs of improvements to the five lots retained by the appellants in Addition No. 2. The record also reveals problems caused by the respondent's efforts to secure FHA approval of the project as required by the contract. After some period of delay, the appellants relieved the respondent of this requirement. We find the trial court's finding of fact is supported by substantial evidence in the record and we will not disturb it. *See Piacitelli v. Southern Utah State College,* Utah, 636 P.2d 1063 (1981).

■ The appellants also challenge the trial court's conclusion of law that the parties "by their conduct, waived a right to rely upon the strict performance of the contract in the supposed timetable" set out for the construction of houses. The appellants argue that the respondent's obligation was to put in the street and utility improvements and then submit a bill to the appellants for their share. The appellants claim that they were not required to agree to a total cost for the improvements in advance and that they therefore did not waive their rights to expect strict compliance by discussing the projected costs with the respondent. However, the respondent, because of the words and conduct of the appellants, had a reasonable basis to believe the appellants would not accept the respondent's determination of a reasonable cost for the improvements. The respondent was justified in requiring assurances that the appellants would pay their fair share of the improvements and in delaying performance as long as negotiations continued. *Restatement (Second) of Contracts* § 251(1) (1979). In light of the finding of fact discussed above and the evidence which supports it, we hold that the appellants waived strict compliance with the timetable set out in the contract.

The respondent had two obligations under the contract. First, he was obligated to pay $40,000 for the property itself. Second, he was obligated to survey, subdivide and secure approval of a master plan for the property in exchange for the right to make lot-by-lot payments as houses were constructed. A timetable was set out in the contract for installing subdivision improvements and building houses. However, strict compliance with that timetable was waived by the appellants. The respondent's obligation for the payment of $40,000 was completed with the tender of the balance due in March of 1979. He had previously satisfied his obligation to subdivide the property. The appellants' remaining obligation was to release the mortgage on the balance of the property in Addition No. 2. Therefore, we affirm the trial court's dismissal of the appellants' cause of action and further affirm the trial court's order that the mortgage be released by the appellants upon payment by the respondent of the agreed sum of $8,060.25.

The final question we address is the legality and appropriateness of an award of $5,000 in attorney's fees to the respondent. The contract entered into by the parties in 1958 contained a provision for the award of attorney's fees "in the event of suit to enforce the provisions of this agreement" to "the successful party in any such litigation." The appellants appeal the award of any attorney's fees, even if the trial court's underlying judgment in the respondent's favor is affirmed.

The appellants claim that no attorney's fees should be awarded for the respondent's successful defense because of the language of the prayer for relief in the respondent's answer. The respondent prayed that the court dismiss the appellants' claim with prejudice and that the "defendant be granted the relief requested in its counterclaim." The appellants claim that the respondent waived any claim for attorney's fees directly related to the defense of the appellants' causes of action by not specifically asking for them in his answer. Consequently, the respondent's claim for attorney's fees in his counterclaims must be limited only to those efforts directly related to any of the counterclaims which are successfully prosecuted.

■ We reject the appellants' contention that the respondent's pleadings are somehow inadequate to preserve his claim for attorney's fees. Utah has adopted what is generally referred to as "notice pleading." Rule 8(e), Utah R.Civ.P., specifically provides that "no technical forms of pleadings or motions are required." The appellants were clearly on notice that the respondent prayed that the relief set forth in the counterclaims be awarded in connection with the dismissal of the appellant's complaint. The specific prayer for attorney's fees is set out in the counterclaim. We hold that no more is required of the respondent to preserve his claim to attorney's fees both as to the defense to the appellants' complaint and for prosecution of his counterclaim.

■ The appellants also claim that no attorney's fees can be awarded for the respondent's success on his fourth counterclaim because it is founded on the 1973 promissory note which contains no attorney's fee provision. The appellants rely on the trial court's conclusion of law that the buyer and seller treated the promissory note as payment on the real estate contract. However, the trial court also found that the parties treated the contract as viable up to the year 1978. The promissory note contains no details for interest or a repayment schedule; it simply refers back to the real estate contract. The provision on which the respondent relies for release of the mortgage is also only found in the real estate contract. We hold that the respondent's claim for attorney's fees in his counterclaim demanding release of the mortgage pursuant to the contract is valid.

■ The respondent's attorney testified that $5,500 in attorney's fees had been billed prior to the trial and that an additional $2,000 in fees would accrue during the trial. A summary of the attorney's fees was admitted into evidence. The court found, in rejecting the respondent's total claim for attorney's fees, that "a goodly portion of the time" would have been directed to activities other than simply defending against the appellants' claim and affirmative recovery under the single counterclaim upon which the respondent prevailed. The award of attorney's fees is in the sound discretion of the trial court and will not be overturned in the absence of a showing of a clear abuse of that discretion. *See Beckstrom v. Beckstrom,* Utah, 578 P.2d 520 (1978); *Turtle Management v. Haggis Management,* Utah, 645 P.2d 667 (1982). We find no clear abuse of discretion and affirm the award of attorney's fees. Furthermore, following the rule of law which we adopted in *Management Services v. Development Associates,* Utah, 617 P.2d 406 (1980), we remand this case to the district court with instructions to determine reasonable attorney's fees for the respondent's successful defense to this appeal. *See also Edwards' Pet Supply v. Dale Bentley,* 652 P.2d 889 (1982).

This matter is therefore affirmed and remanded for further proceedings to deter-

mine the amount of attorney's fees as described above. No costs awarded.

HALL, C.J., and STEWART and OAKS, JJ., concur.

HOWE, Justice (concurring and dissenting):

I concur in the result of the majority opinion which requires the plaintiffs to accept the tender of money made by the defendant and to release their mortgage on the remaining lots. I place my concurrence on the ground that although the evidence was conflicting, there was competent evidence adduced that the delay in performance by the defendant was caused by both plaintiffs and defendant, and that both parties acquiesced in the delay right up to the time when the defendant tendered his money to pay for the remaining lots.

In answer to the plaintiffs' claim that they are entitled to attorney's fees because they successfully defeated several of the defendant's causes of action which he stated in his counterclaim, that fact alone does not make the plaintiffs the "successful party" in the action. I say this because the plaintiffs failed to recover anything on their complaint and the defendant was awarded specific performance on the fourth cause of action of his counterclaim. It is not necessary that the defendant win on all of the causes of action which he stated in his counterclaim. It is only necessary that he prevail on one of them to become the "successful party" in the lawsuit. This is especially true in this action where the several causes of action pleaded in the counterclaim were seeking alternative relief. Some sought damages and others sought specific performance. Defendant could not expect to prevail on all of them. See *Checketts v. Collings,* 78 Utah 93, 1 P.2d 950 (1931).

I dissent, however, from the majority opinion wherein it affirms outright the judgment of the trial court. The real estate contract provided that the defendant not only pay for the property but also that he "forthwith subdivide the same, bonding himself to pay for all necessary improvement." The performance of this promise is part of the consideration that the plaintiffs are entitled to receive in addition to the price of the land. Plaintiffs reserved five lots but their value will be diminished if the defendant does not "forthwith" construct improvements in Addition No. 2 so that there will be access to those lots and the utilities available. Plaintiffs are, of course, obligated to pay for the improvements on their five lots, but it is also of value to them that the improvements on the other lots be completed. Also, Mr. Sears, one of the plaintiffs, has a separate sales agency agreement with defendant to sell the completed houses built on the property. Therefore, it is important that the defendant be required to build and complete houses on the remaining lots in Addition No. 2. I would remand the case to the trial court for the judgment to be amended to include an appropriate order that the defendant construct the improvements in Addition No. 2 forthwith, and proceed to build houses on the lots he purchased in accordance with the real estate contract.