**DIXIE STATE BANK, a Utah corporation, Plaintiff and Appellant,**

v.

**Kirk BRACKEN and Linford Bracken, Defendants and Appellees.**

No. 19375.

Supreme Court of Utah.

Oct. 25, 1988.

Michael D. Hughes, Dale R. Chamberlain, St. George, for plaintiff and appellant.

John Miles, St. George, for defendants and appellees.

ORME, Court of Appeals Judge:

Appellant Dixie State Bank seeks review of the trial court's award of judgment in the bank's favor. The bank contends reversible error was committed in awarding to it a considerably lower amount for recoverable attorney fees than was actually incurred. We agree and reverse.[1]

---

1. This case was argued, along with two other cases, in St. George, Utah. The Fine Arts Audi-

## FACTS

The bank loaned Kirk and Linford Bracken $7,695 to purchase a 1979 pickup truck. The loan was memorialized in a promissory note for $10,094.40, which included the full amount which would become due, with interest, over the four-year term of the loan. The note unambiguously called for monthly installment payments to be made by the fifth day of each month for 48 consecutive months. A "summary statement" accompanying the note repeated these key terms. For the twin purposes of reminding the Brackens to make timely payments and assisting the bank in properly crediting the payments made, the Brackens were given the customary payment coupon book. The coupon book unambiguously contemplated a monthly payment schedule. Contemporaneously with the execution of the note, the Brackens executed a security agreement by which the bank obtained a security interest in the pickup. The Brackens made the first four required payments without incident.

Meanwhile, the loan had been incorrectly set up on the bank's internal records. The bank's computer showed the loan as requiring semi-annual, rather than monthly, payments. So far as the computer was concerned, the four payments made by the Brackens did not leave them current as of the fourth month, but rather paid ahead by some two years. The bank's confusion came to the attention of the Brackens, who chose to cease making payments.

Eventually, however, the internal accounting error was discovered by bank personnel. With that discovery came the realization that the Brackens were many months behind in the payments they clearly owed. The bank acquainted the Brackens with its discovery and solicited the missing payments. Rather than immediately settling up after the error had been discovered, the Brackens, no doubt hopeful the computer would again back them up, first claimed they really had made all the required payments and then tried to convince the bank it was to blame and to work out some kind of a deal. Those efforts ultimately failed, and the bank repossessed the truck and accelerated the debt.

Following notice to the Brackens and the Brackens' failure to redeem, the truck was sold at private sale pursuant to published notice. The Brackens were the high bidders at the sale and bought their truck back for $5,000, leaving a substantial deficiency. Demand for payment of the deficiency was made. When it was not received, the bank commenced suit to recover the balance still owing on the loan. Because the note and security agreement both contained attorney fee provisions,[2] the bank also sought an award of attorney fees.

The Brackens moved to dismiss on grounds of payment, waiver, and estoppel. Their supporting affidavit explained that they had been informed by bank personnel during the long period of non-payment that the loan was current. A battle of affidavits and motions to strike ensued, but the motion to dismiss was denied in due course. The Brackens answered and included, as part of their answer, a counterclaim. The counterclaim alleged that repossession of the truck was wrongful[3] and damaged the

---

torium on the campus of Dixie College was the setting for argument, which was attended by over 150 people. This occasion marked the first time since statehood that this Court has heard cases outside Salt Lake City. This historic special session, as well as sessions held in Price and Logan, was part of a program called "We the People of Utah," a statewide observance of the bicentennial of the United States Constitution sponsored jointly by the Utah judiciary and the Utah State Bar.

**2.** The note, after reciting the events of default, stated: "In event of any such default or acceleration, the undersigned, jointly and severally, agree to pay to the holder hereof reasonable attorney's fees, legal expenses and lawful collection costs in addition to all other sums due hereunder." The security agreement provision on attorney fees appears to be applicable only to fees incurred pre-sale.

**3.** The Brackens' theory appears to have been that the bank's internal computer printout modified the note and converted the obligation from one requiring monthly payments of $210.30 to one requiring semi-annual payments of $210.30. Because the fifth "semi-annual payment" was not yet due when the truck was repossessed, the Brackens claimed that the repossession was unlawful. The theory poses a number of difficulties, not the least of which is that two pay-

Brackens' "credit reputation." The Brackens claimed the bank had acted maliciously. They demanded $5,000 in general damages, damages unspecified in amount to reimburse for costs of substitute transportation and other costs resulting from the repossession, attorney fees, and "punitive damages of $200,000 or such larger amount as will serve the traditional purpose of punishing the wrongdoer in an amount that will deter future acts of the same nature."

Depositions were noticed and taken and documents requested. The case was eventually set for non-jury trial. The Brackens persuaded the trial court to continue the trial to permit an additional deposition and demanded a jury trial. The deposition was taken and the trial reset. Shortly before trial and at the request of the Brackens, the jury setting was stricken. At trial, the court urged counsel for both sides to confer on settlement after hearing opening statements. After a recess was taken for that purpose, counsel informed the court that a stipulation had been reached. Under its terms, the bank was entitled to judgment in the full amount of principal and unpaid interest due on the post-sale obligation, plus costs, plus attorney fees in an amount found reasonable by the court. In addition, the counterclaim was dismissed in its entirety. In exchange for their capitulation, the Brackens were given 90 days from its entry during which the judgment could not be executed upon.

The court then took testimony concerning the attorney fees issue. Counsel for the bank detailed the efforts he had expended on the bank's behalf, emphasizing that most of what he did was a direct result of the defensive posture undertaken by the Brackens. He had to meet the motion to dismiss. He had to reply to the counterclaim. He had to defend depositions taken by the Brackens, and he had to take their depositions in view of the magnitude of their counterclaim. He had to prepare for trial, including the preparation of jury instructions in view of the Brackens' demand for a jury which was not rescinded until shortly before trial. Because of the nature of the counterclaim, "stock" jury instructions were of only limited utility and numerous "customized" instructions had to be researched and prepared. He testified as to the hours he had expended, for which he charged $75 per hour, and to some legal research which he hired done at $15 per hour. The total fee, he testified, was $4,847.50. He adjudged it reasonable.

Counsel for the Brackens then testified. He opined that a reasonable fee for the bank's attorney would be "no more than $2,000," using as a point of reference the fee his own clients had incurred, which was $1,200. He suggested that the bank's counsel had overreacted by preparing jury instructions pertinent to matters not expressly raised in the counterclaim, but conceded that the possibility of amendment pursuant to Utah Rule of Civil Procedure 15(b) made anticipation of those matters plausible. He reminded the court of the bank's computer error. He minimized the significance of the counterclaim, stating that "the $200,000 claim was something to give the bank a pause for concern, maybe they would suggest a settlement and we would resolve the matter."

The court determined at the hearing to award only $1,500 as attorney fees for the bank, citing public discontent over the levels to which attorney fees have risen and the comparatively modest amount put in issue by the complaint.[4] However, at the hearing the court found the total fee claimed by the bank to be reasonable. During an exchange with the bank's counsel, the court reiterated its finding:

> I made the ruling with respect to your work and what you were facing and whether or not it was reasonable. I have found your fees to be reasonable.

ments annually of $210.30 each on a $7,695 principal obligation bearing interest at 14 percent would not be sufficient even to retire current interest. By the year 2000, the Brackens would have owed the bank $21,485, secured by a twenty-one-year-old truck.

**4.** The court also purported to find, despite the fact that the only testimony received was offered by counsel and was limited to the attorney fees issue, that "the initial mistake was made by the bank.... I want the original mistake to be placed on the part of the bank."

....

... I want that in the findings.

....

Now, Mr. Hughes, it is clear I have ruled that the time you put in, the fees you charged and the instructions and work that you did was fair and reasonable in light of what you were facing. That's almost an exact quote of the finding that the Court wants in there.

As instructed by the court, counsel for the bank prepared written findings. Finding No. 15, left unchanged by the court, was phrased as follows:

The Court finds that this sum, to-wit $4,747.50 is a reasonable attorney's fee, and adequately represents the necessary time and preparation for this case.

Finding No. 18, as submitted, read as follows:

The Court finds that the amount of attorney's fees claimed of $4,747.50, though reasonable in all regard, constitutes a sum approximating the debt due on the note, absent any assessment for attorney's fees.

To that finding, but without lining through any of the text as submitted, the court added the following phrase, with our emphasis added: "[A]nd from the testimony and the file the court finds $1,500.00 is a reasonable fee *to be assessed* against [defendants]."

Taken as a whole, we believe the trial court's intent was to find that the fee claimed by the bank was in fact a reasonable fee, but that for policy reasons it was appropriate (i.e., "reasonable") to assess a lesser amount against the Brackens. Justice Howe takes a different interpretation of the trial court's pronouncements and concludes that the court actually intended to find that $1,500 was a reasonable attorney fee under all the circumstances.

We must accordingly address two issues: first, and assuming our construction of the court's various findings is correct, whether

the trial court erred in awarding substantially less than what it determined was a reasonable attorney fee; and second, assuming Justice Howe has correctly divined the trial court's position, whether the court abused its discretion in finding a reasonable fee for the bank to be $1,500.

Before addressing those issues directly, we pause to review our prior decisions in this area and to offer some practical guidelines.[5]

## GENERAL PRINCIPLES

■ In Utah, attorney fees are awardable only if authorized by statute or by contract. *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 734 (Utah 1985); *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982); *see* Utah Code Ann. § 78–27–56 (1987). If provided for by contract, the award of attorney fees is allowed only in accordance with the terms of the contract. *Trayner v. Cushing*, 688 P.2d 856, 858 (Utah 1984) (citing *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d at 671); *see also L & M Corp. v. Loader*, 688 P.2d 448, 450 (Utah 1984) (since contract was not subject of litigation, contract provision allowing attorney fees was not applicable). In the present case, the note required the Brackens to pay reasonable attorney fees in the event of any default or acceleration, both of which occurred.

■ Calculation of reasonable attorney fees is in the sound discretion of the trial court, *Jenkins v. Bailey*, 676 P.2d 391, 393 (Utah 1984), and will not be overturned in the absence of a showing of a clear abuse of discretion. *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d at 671. However, an award of attorney fees must be supported by evidence in the record. *Associated Indus. Dev., Inc. v. Jewkes*, 701 P.2d 486, 488 (Utah 1984); *Bangerter v. Poulton*, 663 P.2d 100, 103 (Utah 1983); *see Cabrera v. Cottrell*, 694 P.2d 622, 624

---

5. Perceiving the need for meaningful guidelines in this area for trial courts, litigants, and attorneys, the trial court urged that an appeal be taken to this Court: "And, again, I encourage you both to take it on appeal. I think it is a case that should be addressed by the Supreme Court of the State of Utah with respect to fees. I have indicated that I think it is a subject that should have some attention to give guidelines, if nothing else, to lawyers with similar lawsuits."

(Utah 1985) ("award of attorneys fees must generally be made on the basis of findings of fact supported by the evidence and appropriate conclusions of law"); *Jenkins v. Bailey*, 676 P.2d 391, 393 (Utah 1984) (abuse of discretion for trial court to award three times more than the amount of fees supported by the evidence); *Hal Taylor Associates v. Unionamerica, Inc.*, 657 P.2d 743, 750–51 (Utah 1982) (since party did not present evidence on issue of attorney fees at trial, trial court did not commit error in declining to make an award).

Part of the trial court's discretion involves evaluation of the evidence presented. In *Beckstrom v. Beckstrom*, 578 P.2d 520 (Utah 1978), the attorney testified that the fees were appropriately $800, but the trial court awarded only $500. On appeal, we upheld the award and explained: "Even though that evidence is undisputed, the trial judge was not necessarily compelled to accept such self-interested testimony whole cloth and make such an award; and in the absence of patent error or clear abuse of discretion, this court will not disturb his findings and judgment." *Id.* at 523–24. In addition, the trial court is allowed to reduce the amount asserted by one party in determining a reasonable fee. *See, e.g., Appliance & Heating Supply, Inc. v. Telaroli*, 682 P.2d 867, 868 (Utah 1984); *Sears v. Riemersma*, 655 P.2d 1105, 1110 (Utah 1982). In *Alexander v. Brown*, 646 P.2d 692 (Utah 1982), this Court affirmed a trial court's award of attorney fees where the trial court chose the middle ground between two estimates of what were reasonable fees. *Id.* at 695.

## PRACTICAL GUIDELINES

While it is clear that trial courts enjoy broad discretion in evaluating evidence to determine what constitutes a reasonable fee, there is little Utah law providing prac-

tical guidelines for this determination.[6] A brief discussion of earlier cases that have listed factors the trial court should consider in determining a reasonable fee is fundamental to our analysis in the present case. In *Wallace v. Build, Inc.*, 16 Utah 2d 401, 402 P.2d 699 (1965), this Court explained that what constitutes a reasonable fee is not necessarily controlled by any set formula. 16 Utah 2d at 405, 402 P.2d at 701. We stated: "What is reasonable depends upon a number of factors, the amount in controversy, the extent of services rendered and other factors which the trial court is in an advantaged position to judge." *Id.*

In *Trayner v. Cushing*, 688 P.2d 856 (Utah 1984), this Court enlarged the list of potential factors by including "the relationship of the fee to the amount recovered, the novelty and difficulty of the issues involved, the overall result achieved and the necessity of initiating a lawsuit to vindicate the rights under the contract." *Id.* at 858 (citing *Turtle Management, Inc. v. Haggis Management, Inc.*, 645 P.2d 667, 671 (Utah 1982)).

Finally, in *Cabrera v. Cottrell*, 694 P.2d 622 (Utah 1983), which contains our most detailed analysis of attorney fees to date, the Court added

the difficulty of the litigation, the efficiency of the attorneys in presenting the case, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality for similar services, the amount involved in the case and the result attained, and the expertise and experience of the attorneys involved.

*Id.* at 625. The trial court may also take into account the provision in the Code of Professional Responsibility which specifies the elements that should be considered in

---

**6.** In many instances, where the question arises at all, the attorney fees issue is treated as incidental by the appellant, who focuses on more substantial issues, and has accordingly tended to receive the same kind of cursory treatment by us. *See, e.g., Golden Key Realty, Inc. v.*

*Mantas*, 699 P.2d 730, 734 (Utah 1985); *Bangerter v. Poulton*, 663 P.2d 100, 103 (Utah 1983). This case, which involves *only* the issue of attorney fees, provides us with a unique opportunity to clarify our standards for evaluating attorney

setting reasonable attorney fees.[7] *Id.* at 624.

Although all of the above factors may be explicitly considered in determining a reasonable fee, as a practical matter the trial court should find answers to four questions:

1. What legal work was actually performed? [8]

2. How much of the work performed was reasonably necessary to adequately prosecute the matter? [9]

3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services? [10]

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

It is important to note that with this analysis, what an attorney bills or the number of hours spent on a case is not determinative. *See Cabrera v. Cottrell,* 694 P.2d at 624–25. The appropriateness of the work actually performed and of the attorney's billing rate is evaluated before a reasonable fee is set. In addition, although the amount in controversy can be a factor in determining a reasonable fee, care should be used in putting much reliance on this factor. It is a simple fact in a lawyer's life that it takes about the same amount of time to collect a note in the amount of $1,000 as it takes to collect a note for $100,000. As stated in *Cabrera:*

> The total amount of the attorneys fees awarded in this case cannot be said to be unreasonable just because it is greater than the amount recovered on the contract. The amount of the damages awarded in a case does not place a necessary limit on the amount of attorneys fees that can be awarded.

694 P.2d at 625.

### APPROPRIATENESS OF AWARD IN THIS CASE

The trial court, in our view, found the $4,847.50 fee requested by the bank's counsel to be "fair and reasonable" in the circumstances. We agree with this determination, which is adequately supported in the record, and accordingly find no abuse

---

fees awards against an abuse-of-discretion standard.

**7.** *See* Utah Code of Professional Responsibility DR 2–106, in effect when the instant case was decided. The factors of a reasonable fee listed in 1.5(a) of the Rules of Professional Conduct, effective January 1, 1988, are substantially similar to those listed in DR 2–106(B).

**8.** Several judicial districts have supplementary rules of practice that require affidavits in support of an award of attorney fees. These rules require that the attorney specifically set forth the nature of the work performed and the number of hours spent in prosecuting the claim to judgment or to the stage for which the attorney fee is claimed. The affidavit must also separately state hours worked by those other than attorneys, with an explanation of the time spent, work done, and hourly charge billed. *See, e.g.,* Rule 10, Rules of Practice, 2nd Judicial District; Administrative Order 23, Rules of Practice, 4th Judicial District. These supplementary rules are fully consistent with the guidance we outline in the present case.

**9.** *See Kerr v. Kerr,* 610 P.2d 1380, 1384 (Utah 1980) (award of fees must rest on evidence of need and reasonableness). Trial courts are accustomed to apportioning attorney fees between multiple parties and attributing fees to separate causes of action. In *Turtle Management, Inc. v. Haggis Management, Inc.,* 645 P.2d 667, 671 (Utah 1982), the appellant-plaintiff argued that it should be awarded the attorney fees expended in prosecuting its claim against all defendants because it was successful against a single defendant. This Court disagreed, stating: "When a plaintiff has a substantial claim against one defendant, he should not have a free ride to assert claims against other defendants with the expectation that the target defendant will end up paying all attorney's fees, even those related to unsuccessful and perhaps frivolous claims." *Id.* at 671. In *Paul Mueller Co. v. Cache Valley Dairy Ass'n,* 657 P.2d 1279, 1288 (Utah 1982), the trial court awarded $17,000 in attorney fees instead of the $47,000 requested. On appeal, this Court upheld the award because the trial court had "sufficient information before it in the billing records to enable it to separate the [unrecoverable] counterclaim hours from those spent in the defense of the main causes of action." *Id.* at 1288.

**10.** *See Kerr v. Kerr,* 610 P.2d 1380, 1384–85 (Utah 1980) (testimony on the rates commonly charged for divorce actions in the community was absent, showing no attempt to characterize the requested fees as reasonable).

of discretion in that regard. However, we hold that if reasonable fees are recoverable by contract or statute and the trial court considers all pertinent factors and determines in the exercise of its sound discretion that a specific sum is a reasonable fee, it is a mistake of law to award less than that amount. Stated another way, the trial court has broad discretion in determining what constitutes a reasonable fee, and we will consider that determination against an abuse-of-discretion standard. However, once the trial court makes that determination in the exercise of its sound discretion, it commits legal error if it awards less than the reasonable fee to which the successful litigant is entitled. As explained above, this appears to be just what happened here.

■ However, we reach the same result even if Justice Howe is correct that the trial court meant to find that a reasonable attorney fee in this case was $1,500. Such an award would constitute an abuse of discretion because the factors mentioned by the trial court in discounting the fee, as outlined by Justice Howe, are without support in the record or are otherwise inappropriate.

First, while the bank's fee is large relative to the amount of its claim, it is small relative to the counterclaim interposed by the Brackens. The Brackens' litigation strategy converted the action from a routine collection action of a magnitude such that it might have been brought in circuit court into a brouhaha of much larger proportions.

Second, and more importantly, the fees incurred by the bank were increased several-fold over what they should have been by the tactics employed by the Brackens. It was the Brackens who raised unsuccessful motions before answering the complaint. It was the Brackens who asserted an unmeritorious counterclaim. It was the Brackens who got the first trial setting continued to take further depositions and obtain a jury trial. After the bank's counsel prepared accordingly, it was the Brackens who waived the jury they had earlier demanded. The attorney fees incurred by the bank were clearly much higher than

they should have been in this case; but they were higher because of the inconsistent and unmeritorious positions taken by the Brackens—not because of any extravagance or "overkill" on the bank's part.

Third, the court's finding that the bank was at fault is not supported by any actual evidence. *See* note 4, *supra.* Insofar as it can be ascertained from the record that the bank's computer error played a part in the chain of subsequent events, it is likewise clear that it was really the Brackens' effort to take advantage of that error, despite the clear requirements of their note, summary loan statement, and coupon book, which caused the problem that resulted in litigation.

Accordingly, we reverse the district court's judgment as it concerns the award of attorney fees and remand for modification of the judgment to include an award of $4,847.50 in attorney fees to the bank.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate C.J. (dissenting):

I dissent. The majority opinion misinterprets the trial court's finding on attorney fees and then proceeds to erroneously define as an issue whether the trial court erred in "awarding substantially less than what it determined was a reasonable fee."

The majority's error stems from a finding of fact made by the trial court which is confused and ambiguous on its face and should be interpreted in light of the judge's bench ruling at the end of the trial. Finding of fact No. 18, as it was prepared by counsel for plaintiff and submitted to the trial judge for signature, stated:

> The Court finds that the amount of attorney's fees claimed of $4,747.50, though reasonable in all regard, constitutes a sum approximating the debt due on the note, absent any assessment for attorney's fees.

However, before the judge accepted that finding, he added in his own handwriting the following:

And from the testimony and the file the court finds $1,500.00 is a reasonable fee to be assessed against defendants.

On its face, the court finds both $4,747.50 and $1,500 to be a reasonable fee. That obviously cannot be correct, and resort must be had to the judge's pronouncement from the bench when he fixed the amount of the fees. He then explained that he did not dispute that plaintiff's attorney had expended the hours on the case which he claimed and did not dispute that the hourly rate charged by plaintiff's attorney was reasonable. He commented that looking only at those two factors, the $4,747.50 requested by plaintiff's attorney was reasonable. However, he hastened to observe that "the Court would find the fees must have some reasonable relationship to the amount that can be gained or whatever potentially could be lost." The judge further observed that defendants' attorney (who had to carry the burden of proof on the counterclaim which presented the only issue in the case) testified that his fees would only be $1,200. To further explain why the court was fixing the fees at $1,500, he gave counsel the following example:

> Let me say this to you: You can take two little toy cars out and wreck them in the middle of the Courtroom and have all of the people in here witness it, then take all of their depositions and prepare for trial and jury instructions and take the time of the Court, and the lawyers can do all those things. And when you get down to it, you can try the suit on the same basis and principle that would apply in any kind of case of similar kind. But keep in mind it was just little toy cars out there. And so I find that in this case ... the attorney fee is in relationship to the amount to be assessed against the defendant.

When counsel for plaintiff protested that the $1,500 fee was low, the court stated:

> I want in the findings of fact that the initial mistake was made by the bank.... Well, I want the original mistake to be placed on the part of the bank.

Thus, the record before us makes it abundantly clear that the trial judge was influenced in setting the fee at $1,500 because of the small amount sued upon by plaintiff and the fact that plaintiff's mistake with its computer precipitated the litigation. The amount sued upon by the bank was $3,858.84. By the time judgment was recovered, accrued interest at the rate of 14 percent per annum had made the amount owing to plaintiff $4,748.39.

The majority opinion states that the trial court found that a fee of $4,747.50 was a reasonable fee and then concludes that it is a "mistake of law" or the court "commits legal error" if it awards a lesser amount. That simply did not happen here where the trial judge, without questioning the hours spent and the reasonableness of the hourly rate, found and wrote in his own handwriting that under all of the circumstances, $1,500 was a reasonable fee. Thus, the only issue for us to determine in this case is whether he abused his discretion in fixing the fee at that amount. I agree with the majority that the trial court erred in giving weight to the fact that an error by the plaintiff bank gave rise to this litigation. The bank error was so obvious that defendants could not have reasonably relied on it and become misled. The majority opinion also correctly states that what an attorney bills for the number of hours spent on a case is not determinative and that the amount in controversy or, stated another way, the relationship of the fee to the amount recovered is a factor which should be considered by the trial judge. *Traynor v. Cushing*, 688 P.2d 856, 858 (Utah 1984); *Wallace v. Build, Inc.*, 16 Utah 2d 401, 405, 402 P.2d 699, 701 (1965). However, by holding that plaintiff should have been awarded the whole $4,747.50 claimed, the majority gives *no* weight at all to this factor. See Utah Code of Professional Responsibility DR2–106, set out in full in *Cabrera v. Cottrell*, 694 P.2d 622, 624–25 (Utah 1985), which also lists "the amount involved and the results obtained" as a factor to be considered by the court in determining the reasonableness of a fee. In fact, the majority, by listing the four questions for which the trial court should

find answers, minimizes this important factor.

In an attempt to justify the $4,747.50 fee, the majority refers to the efforts of bank's counsel to defend against the counterclaim. The difficulty with that reference is that attorney fees are recoverable only for legal expenses in collection on the promissory note and not for defending counterclaims which may be interposed by a debtor in the suit on the note. *Stubbs v. Hemmert*, 567 P.2d 168, 171 (Utah 1977); *Nelson v. Newman*, 583 P.2d 601, 603–04 (Utah 1978). Here, the counterclaim was for the alleged malicious, tortious acts of the bank. The prayer for $200,000 was for punitive damages on account of the tort. Clearly, the bank is not entitled to attorney fees for defending a tort claim by defendants, and the majority errs in its reliance on that factor in attempting to justify the higher fee.

The majority recognizes that the calculation of a reasonable fee is in the sound discretion of the trial court and will not be overturned in the absence of a showing of a clear abuse of discretion and cites case law in support thereof. One such case is *Beckstrom v. Beckstrom*, 578 P.2d 520, 524 (Utah 1978), where the attorney testified that a reasonable fee would be $800, but the trial court awarded only $500. On appeal, we upheld the award, explaining that although the evidence is undisputed, the trial judge was not necessarily compelled to accept such self-interested testimony whole cloth and make such an award; and in the absence of patent error or a clear abuse of discretion, this Court will not disturb his findings and judgment.

The majority also cites *Alexander v. Brown*, 646 P.2d 692, 695 (Utah 1982), where this Court affirmed a trial court's award of attorney fees which was a compromise figure between two estimates of what was a reasonable fee. Yet in the instant case, the majority denies the trial court that same broad discretion and orders a substantially higher fee than the court fixed. The majority cites no case, and I have been unable to find any case where

this Court has so disturbed a trial court's discretion to set a fee.

In the instant case, the bank sued for $3,858.84 plus interest. The requested fee was $4,747.50, which the judge reduced to $1,500 because an error of the bank gave rise to the dispute and because of the small amount owing on the note. Since the court's reliance on the error made by the bank was misplaced, I would remand this case to the trial court to have the fee fixed absent consideration of the bank's error.

STEWART, J., does not participate herein; GREGORY K. ORME, Court of Appeals Judge, sat.